UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Marvin CORRIGAN,
Defendant-Appellant.

No. 75–1918.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 5, 1976.

Decided Jan. 3, 1977.

Rehearing Denied Jan. 31, 1977.

Daniel B. Mohler, Colorado Springs, Colo., for defendant-appellant.

James P. Castberg, U. S. Atty., Frederic C. Reed, and Jerome F. Statkus, Asst. U. S. Attys., Cheyenne, Wyo., for plaintiff-appellee.

Before LEWIS, Chief Judge, and HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Appellant was convicted of violating 18 U.S.C. § 111, which provides: "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title, while engaged in or on account of the performance of his official duties," shall be guilty of an offense against the laws of the United States. Appellant assaulted Internal Revenue Service agents (federal officers designated in 18 U.S.C. § 1114) during his arrest on charges of misdemeanor tax law violations. On appeal he contends the jury was given erroneous instructions concerning his defense of self-defense.[1]

On the afternoon of February 15, 1974, a warrant was issued for appellant's arrest, and IRS special agents W. L. "Vick" Vickers, Gerry Sparks, and Derral Thomas went to Casper, Wyoming, to effect the arrest. They had reason to believe appellant would be at the Ramada Inn in Casper attending a meeting of an organization known as the Wyoming Patriots. Agent Vickers had become acquainted with appellant through his investigation of appellant's tax law violation and through his investigation of the Wyoming Patriots. Their prior meetings had been cordial, and appellant had met with Vickers whenever he was requested to do so. Appellant had examined Vickers' credentials, including a pocket commission and a badge.

The agents arrived at the Ramada Inn at about 6:15 p.m., but they did not see appellant. During the evening they drove by his house, saw no lights, and assumed he was not at home. They returned to the Ramada Inn parking lot to wait.

At about 10:00 p.m. the agents saw appellant and a young woman (appellant's sister) standing outside the lounge entrance to the hotel. Appellant was facing the building. Vickers walked in front of appellant; the other two agents came up behind him. Appellant and Vickers exchanged greetings and shook hands. According to Vickers, appellant said something about Vickers' missing a big meeting inside. Vickers told appellant he might miss one too because he

---

1. Appellant also contends the court erred in refusing to give his tendered instruction on the necessity of force as an element of the offense. We believe the instructions were adequate on this point and require no discussion in this opinion.

was under arrest for willfully furnishing false information to his employer on his withholding allowance certificates. Vickers said he had a warrant, but he did not produce it. Appellant said, "Wait a minute." Vickers insisted, "Eddie, you're under arrest. Let's go." Almost simultaneously Agent Thomas said, "Let's get him to the car." Thomas grabbed appellant's left arm and spun him around toward the agents' unmarked car. Agent Sparks took appellant's other arm and started walking him to the car. Appellant's sister had by this time gone back inside the hotel.

They went only a few steps before appellant jerked his right arm free and pulled a spray cannister from his pocket. He struggled and succeeded in spraying Vickers and Thomas with what they feared was mace. Vickers hit appellant in the face while Sparks and Thomas wrestled him to the ground. Thomas put his knee on appellant's throat and quickly subdued him. After he was in the car appellant said, "At least I got even with you, Vick." Appellant was taken to the hospital for observation and then to the police station.

The spray used by appellant was liquid red pepper, which can cause sneezing, watery eyes, and nausea if taken directly into the eyes, nose, or mouth. It had little effect on either agent in this case.

According to appellant's testimony, because of the friendly greeting and their previously friendly relationship, he thought Agent Vickers was joking when he said he was under arrest. Then, he suddenly found himself being grabbed from behind by two strange men. He testified he was unaware his sister had departed and believed he was acting in defense of her, in self-defense, and in defense of Vickers. He claimed he sprayed Vickers by accident while attempting to spray the two who grabbed him from behind. Agents Sparks and Thomas admitted they never identified themselves. Appellant emphasized that he had been cooperative with Vickers previously and that if he had known who was attempting to subdue him he would not have resisted. Appellant testified it all happened so fast that his

actions were merely reflexive self-defense. Although he knew Vickers was an IRS agent, appellant testified he did not know Vickers had authority to make arrests. He had not seen Vickers for two months and did not know if he was still with the IRS. Appellant said he had mail-ordered the spray cannister for use in self-defense because he was not a good fighter. He had never used it before and did not know what it would do.

■ Appellant dismissed his attorney at the time of trial and represented himself. He made use of his attorney's efforts, however, by submitting his proposed jury instructions and objecting to those given by the court. This preserved for appeal appellant's contention that the trial court's instructions on the issue of self-defense were inadequate because they did not mention the burden of proof. Appellant contends they were ambiguous as to where the burden of proof lay and permitted the jury to infer that the burden of proving self-defense was on the defendant. The trial court did give a general instruction that the burden was on the prosecution to prove the defendant's guilt beyond a reasonable doubt and that the burden never shifted to the defendant. We must consider the instructions in their entirety. *See United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469.

■ There are a number of cases emphasizing the importance of avoiding confusion as to the burden of proof when an affirmative defense such as entrapment, insanity, or self-defense is asserted. In this circuit we have the benefit of the dissenting opinion by Judge Huxman in *Forakis v. United States*, 137 F.2d 581 (10th Cir. 1943). Self-defense was asserted in a murder case, and the trial court failed to instruct on the burden of proof in the self-defense instruction. The majority opinion refused to consider defendant's charge of error because it had not been presented to the trial court. Judge Huxman dissented on the ground the instruction constituted plain error noticeable for the first time on appeal. He stated:

The court failed to give any specific instruction with regard to the burden of proof on the issue of self defense and failed entirely to give any instruction on the amount or quantum of proof required by the government to override the plea of self defense which was put in issue by the defendant.

. . . I have serious doubts whether the jury would have found the defendant guilty if the court had instructed them in substance that *unless the government established beyond a reasonable doubt that the killing was not in self defense, it was their duty to find the defendant not guilty.*

137 F.2d at 583 (emphasis added).

■ This court also has indicated, in regard to the affirmative defense of insanity, that once a defendant introduces evidence raising a triable issue of fact on his theory of defense, the jury should be instructed that the standard of proof beyond a reasonable doubt applies to the affirmative defense. *Otney v. United States,* 340 F.2d 696 (10th Cir. 1965).

Two cases from the Ninth Circuit are closely in point. In *DeGroot v. United States,* 78 F.2d 244 (9th Cir. 1935), self-defense was asserted in defense of a murder charge. The court of appeals found the self-defense instruction confusing as to the burden of proof. A general instruction on the burden of proof beyond a reasonable doubt had been given. The court held:

A specific instruction which is defective in respect to the burden of proof is not remedied by correct general statements of the law elsewhere given in the charge unless the general statement clearly indicates that its consideration must be imported into the defective instruction.

78 F.2d at 253. *Notaro v. United States,* 363 F.2d 169 (9th Cir. 1966), involved the affirmative defense of entrapment. The court found the entrapment instruction permitted misinterpretation by the jury of the standard of proof to be applied to the defense. The court said:

The jury was properly informed, in a general instruction, as to the burden of proof which rested upon the prosecution; however, we cannot assume that it carried the advice of the general instruction into application to the instruction emphasizing the specific elements of the defense. The possibility that there was confusion or misunderstanding is strengthened, not eliminated, by view of the instructions as a whole.

363 F.2d at 176. *Accord, Pratti v. United States,* 389 F.2d 660 (9th Cir. 1968).

■ From these cases the importance of avoiding any confusion concerning the burden of proof on an affirmative defense is apparent. The inclusion of a specific statement of the burden of proof in the defense instruction is preferable. Its omission, however, is not reversible error *per se.* The question is whether the instructions, taken as a whole, adequately informed the jury that prosecution's burden of proof beyond a reasonable doubt applied to defendant's affirmative defense. We believe the instructions given in this case fall short of the standard. The relevant instructions follow:

Instruction No. 12.

.  .  .  .  .

You are further instructed that all the Statute in question requires is an intent to assault, not an intent to assault a federal officer; however, on the question of intent, you are instructed that there *may be* circumstances in which ignorance of the official status of the person assaulted, or resisted, negates the existence of criminal intent.

For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances, *might* reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind one *might be justified* in exerting *an element of resistence* [sic], and an honest mistake of fact would not be consistent with criminal intent.

And in this contention on the issue of Defendant's intent, you *may consider* whether the Defendant was ignorant of

the official status of the persons allegedly assaulted, and you *may consider* whether Defendant in good faith acted in lawful defense of his person or property and use [sic] no more than reasonable force to accomplish this purpose.

. . . . .

Instruction No. 14A.

You are further instructed that the Defendant has raised the defense of self defense. And in determining this issue, you *are to consider* whether the Defendant acted in a reasonable manner and as any ordinary person would act under the same or similar circumstances. [Emphasis added.]

■ The equivocal language used here is undesirable in jury instructions. The jury was not told in what circumstances or on what state of the evidence they should acquit the defendant. The language used is so ambiguous that it could permit the jury to infer that the burden of proof on the issue of self-defense was on the defendant. Moreover, it suggests that the burden is on the defendant. The jury was instructed that "*the defendant has raised* the defense of self defense." They were then instructed that they were "to consider" whether he acted reasonably under the circumstances. This instruction, without more, could easily be taken to mean that since the defendant raised the issue, it is his burden to prove it to the jury's satisfaction.

The trial court's choice of language is understandable. Instruction No. 12 is taken virtually verbatim from the Supreme Court's opinion in *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975). In *Feola* the Court held that knowledge the victim is a federal officer is not an essential element of the government's case under 18 U.S.C. § 111. Therefore, the defendant's knowledge of the victim's official status ordinarily is irrelevant. The statement incorporated into the instructions was an explanation that the Court's holding did not imply "that the defendant's state of knowledge is never a relevant consideration under § 111." It is relevant when the defendant denies having

knowledge and asserts he acted in self-defense. The Court was providing guidance for a possible future case but was not intending to recommend a jury instruction.

■ When a defendant has presented sufficient evidence to warrant an instruction on the theory of self-defense, the elements of the defense should be fully defined. Under § 111 the instruction should include, in substance, a statement that if the defendant had no knowledge of the officer's identity and reasonably believed he was the subject of a hostile attack against his person, he was entitled to use reasonable force in his defense. And unless the government has established beyond a reasonable doubt that the defendant did not act in self-defense, the jury should find him not guilty.

■ We are not saying the burden of proof should be reiterated in each separate instruction. In the case of an affirmative defense, however, the potential for misinterpretation is too great to permit ambiguity. An affirmative defense admits the defendant committed the acts charged, but seeks to establish a justification or excuse. In the absence of clear instructions, it is not unlikely that the jury would infer that the government has borne its burden and that it is up to the defendant to establish his justification. This is contrary to the standard of proof beyond a reasonable doubt on all elements of the offense; the defense of self-defense is directed toward negating the element of criminal intent. The best policy is summarized in *Notaro v. United States,* *supra* at 175:

The desire of a careful judge to avoid language which to him may seem unnecessarily repetitive should yield to the paramount requirement that the jury in a criminal case be guided by instructions framed in language which is unmistakably clear.

We have read all the instructions given in this case and are left with the impression the jury could have inferred that the burden of proof on the issue of self-defense was on the defendant or that it required

something less than proof beyond a reasonable doubt. We cannot say the jury did take this inference, in view of the correct general instruction, but the possibility is too great to allow the conviction to stand. The judgment is reversed and the case is remanded for a new trial.