**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Melvin JOHNSON, Defendant-Appellant.**

**No. 78–1918.**

United States Court of Appeals, Seventh Circuit.

Reheard In Banc April 17, 1979.

Decided Sept. 17, 1979.

M. Daniel Friedland, Indianapolis, Ind., for defendant-appellant.

Charles W. Blau, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER and WOOD, Circuit Judges.[1]

HARLINGTON WOOD, Jr., Circuit Judge.

The principal issue is the wording of the jury instruction on entrapment. The defendant appeals his jury conviction of conspiracy both to possess cocaine with intent to distribute and to use a communications facility (a telephone) to facilitate that possession and distribution, in violation of 21 U.S.C. §§ 841(a)(1) and 843(b) (Count I). He also appeals his conviction of the substantive offense of using a communications facility to facilitate the possession and distribution of cocaine, proscribed by 21 U.S.C. § 843(b) (Count II).[2]

The district judge gave the following entrapment instruction:

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness

---

1. The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, was a member of the three-judge panel which decided *United States v. Johnson*, 590 F.2d 250 (7th Cir. 1979), Judge Lay did not participate in this court's vote on plaintiff's suggestion for rehearing *in banc*. *See* Fed.R.App.P. 35.

2. Defendant was sentenced to concurrent terms of two years on each count, with special parole terms of three years on Count I. Defendant was ordered to serve a sentence of fourteen days with the balance suspended and was placed on probation for the remainder of the two years.

to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment. For example, when the government reasonably suspects that a person is engaged in the illicit sale of narcotics, it is not entrapment for a government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from the suspected person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as are charged in the Indictment whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty.

The instruction was given over defendant's objection and in preference to entrapment instructions tendered by him, one of which specifically allocated the burden of proof to the government. The defendant challenges the court's entrapment instruction asserting that it was prejudicial because it failed to specifically state that the government must bear the burden of proving beyond a reasonable doubt that the defendant was not entrapped.

We consider this issue in the light of our prior decisions, *United States v. Landry*, 257 F.2d 425 (7th Cir. 1958), and the later case of *United States v. Gardner*, 516 F.2d 334 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). In *United States v. Landry* several instructions were questioned. The principal instruction regarding entrapment bears little resemblance to the instruction we consider, except both failed within the body of the particular instruction to place the entrapment burden expressly upon the government. The *Landry* instruction contained additional faults. It instructed the jury on matters not in issue and was "confusing," *United States v. Landry*, 257 F.2d at 428. The entrapment instruction was also given in conjunction with another instruction on the quantity of heroin involved which was inconsistent with and ignored the entrapment defense. This court stated that the latter instruction required the jury to believe nothing more to convict than what the defendant conceded in his entrapment defense. The government attempted to justify the entrapment instruction by relying on the general stock instruction that the burden of proof was on the government. We declared that in the circumstances of that case where there was a close question on the issue of entrapment that the stock instruction on the government's burden of proof was not enough cure for all the deficiencies. We noted, however, that in some cases the stock instruction would suffice. 257 F.2d at 430.

It is axiomatic that in determining the propriety of an instruction that all the instructions be considered as a whole. *United States v. Patrick*, 542 F.2d 381, 389 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *United States v. Brown*, 518 F.2d 821, 826 (7th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975); *United States v. Johnson*, 515 F.2d 730, 732–33 n. 7 (7th Cir. 1975). We do not read *Landry* as carving out an exception to that principle so as to require in all cases that the entrapment instruction be judged alone without regard to the other instructions. The jury is generally charged that all instructions should be considered together as a connected series and that special attention should not be given to any particular instruction.[3] We

---

**3.** W. LaBuy, *Jury Instructions in Federal Criminal Cases*, § 2.02 (1963).

see no reason in reviewing the question as judges not to do what we tell the jury it must do. We did that in *Gardner,* 516 F.2d at 349. In reviewing the standard LaBuy entrapment instruction, we considered the instructions as a whole. In considering several objections to the *Gardner* instruction, we noted that the burden was explicitly placed on the government to prove beyond a reasonable doubt that the defendant had not been entrapped. We also gave some consideration to the other general instructions to the effect that the burden of proof was on the government, that the burden did not shift, and that the defendant did not have to produce any evidence. 516 F.2d at 348. In footnote 11, we added that the recommended instruction should make clear that the entrapment burden was on the government. So it should and we again repeat that it is preferable that the entrapment instruction include that specific provision.[4] Failure to do so, however, will not automatically require reversal. In the present case the specific allocation of the burden of proof to the government was omitted from the entrapment instruction. We must, therefore, consider the instructions as a whole as applied to the particular facts in determining whether reversal is warranted.

Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 81, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we consider the facts briefly. In the summer of 1977 the defendant met Derrick Maxwell, and after sampling Maxwell's cocaine, the defendant advised Maxwell that he could supply Maxwell with cocaine of high quality at a better price. Later that year, Maxwell became an informant for the Drug Enforcement Administration. In the fall Maxwell and the defendant met again. The defendant advised Maxwell that his Indianapolis contacts made regular trips to California for drug purposes and that he could provide Maxwell with up to a pound of superior cocaine, "the best in the midwest." The defendant quoted a price around fifteen to eighteen hundred dollars. They exchanged telephone numbers. Defendant stated that if his California connection did not work out, he had other connections. About a week later, the defendant inquired if Maxwell was still interested in purchasing cocaine. Two days later the defendant called Maxwell to advise him that the drugs were available and that his source lived on a farm in Lafayette, Indiana. The next day Maxwell called the defendant and discussed the details of a $2,100 deal for one ounce of cocaine. In a few minutes Maxwell again called defendant about the transaction and possible future transactions. Defendant expressed a desire "to open up this deal one time" with the implication it would clear the way for additional transactions. The proposed trip to Lafayette was discussed as well as compensation to the defendant for setting up the transaction. These conversations were recorded with Maxwell's consent. Later that month two more similarly recorded conversations reveal the final arrangements for the buying trip. The next day the defendant, his friend Lorenzo Penn, and Maxwell, along with undercover DEA Agent Stephen L. White, drove in two cars to Lafayette. Upon arrival, Penn went alone, but under surveillance, to meet the supplier. During Penn's absence, the defendant advised Agent White that he had sampled the cocaine and it was of high quality. Penn returned and discussed the reliability of the supplier, and price and quantity. The defendant and Penn then drove to the supplier's farm to discuss the closing with the two suppliers, Briggs and Long.[5] Part of these negotiations between Penn and Long occurred in defendant's car and in his presence. Agent White called off

---

4. The Federal Criminal Jury Instruction Committee, a *circuit-wide panel of judges and lawyers* chaired by Judge Bauer, has considered proposing either an entrapment instruction containing an express allocation of the burden to the government or an "issues in the case" instruction which clearly and specifically places on the government the burden of proving beyond a reasonable doubt that the defendant was not entrapped.

5. Penn, Briggs and Long, all codefendants, are not involved in this appeal.

this particular transaction after the defendant returned to report on the negotiations. Agent White, who had been introduced by defendant to Penn and Long, however, concluded three other cocaine purchases for a total of $16,000 from Penn and Long within about the next 30 days. The arrests followed.

Penn testified that the defendant had set up the Lafayette trip and knew about and participated in all the original negotiations. Penn further testified that the defendant had contacted him after the Lafayette trip to try to set up another drug transaction. Long also testified about the defendant's involvement. The defendant generally admitted his participation in some of the negotiations, but claimed ignorance as to the purpose of the trip to Lafayette. He went along to attend a concert, he claimed. Defendant's defense was entrapment, but in the alternative that if he had been a member of the conspiracy, he had withdrawn before the actual sales took place. However, the evidence showed the defendant's efforts and interest in the original contact between the buyers and sellers were not restricted to any one sale but were intended as a prelude for future sales for defendant's profit. Defendant did nothing affirmative to divorce himself from what he helped instigate and arrange. He remained a part of the conspiracy and sought to promote it even after the Lafayette trip.

Against that factual background, it cannot reasonably be found that it was a close case on entrapment. The defendant was not new to drugs and sought to promote the negotiations as a go-between for his own gain. The defendant appears not only to have been ready and willing, but anxious to violate the law. The agents only accommodated the defendant's obvious desires.

In the entrapment instruction which was given, there was not the slightest suggestion that entrapment was an affirmative defense which the defendant had to prove to obtain acquittal. To the contrary, the jury was continually reminded throughout the instructions that the burden of proof rested upon the government. It was plainly stated in the instructions that:

> The entire burden of proof is upon the government from the beginning to the end of trial, and this burden of proof never shifts from the government to the defendant, and the defendant is not bound to prove his innocence, offer any excuse, or explain anything.

That statement was not actually in the entrapment instruction itself, but the jurors were advised that all the instructions were to be considered as a whole and that each instruction was to be regarded in the light of all the other instructions. We do not believe that the instructions considered as a whole were so vague or ambiguous as to reasonably permit misinterpretation of the entrapment instruction by the jury. As the trial judge in addition to reading the instructions to the jury sent the instructions with the jury for use during their deliberations with the further admonition to read them there is even less chance that there was any oversight or misunderstanding about the entrapment burden. *See United States v. Donner,* 497 F.2d 184, 194 (7th Cir. 1974). *Contra, United States v. Wolffs,* 594 F.2d 77 (5th Cir. 1979). Although it is preferable to specifically allocate the entrapment burden of proof to the government in the entrapment instruction, we believe that the jury in this case was adequately and properly instructed. We see no need to adopt an inflexible entrapment instruction rule requiring that the entrapment burden always be specifically singled out and allocated to the government within the entrapment instruction. Such a rule would require us to ignore the realities in the differing circumstances of particular cases.

The remaining issues are without merit and require little attention. First, the defendant argues it was error not to give the particular instructions tendered by him on withdrawal from the conspiracy, but in our view the trial court gave an adequate and correct withdrawal instruction.

■ Next, the defendant alleges that the "indictment was a political instrument in soliciting defendant's cooperation with the FBI probe of the CETA Program and the DEA drug investigations centered upon the black community." Had the judge in his discretion permitted excursions into extraneous and collateral matters unrelated to the particular drug transactions, the trial would only have been delayed and the issues confused. Even if we were to consider such evidence to be relevant, there would be no error in its exclusion under Rule 403 of the Federal Rules of Evidence.[6]

The defendant further finds a variety of faults with numerous other instructions, but viewing the instructions as a whole, *United States v. Patrick,* 542 F.2d 381, 389 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551 (1977), we find that the jury was correctly and fully instructed.

Finally, the defendant claims the jury was prejudiced by the trial judge's negative attitude toward defendant's counsel. In response the government claims defense counsel was guilty of unorthodox and unprofessional tactics. In spite of those opposing claims, we find that the trial judge carefully protected the rights of the defendant.

Finding no error, we affirm the conviction.

SWYGERT, Circuit Judge, dissenting.

Because I believe that a jury instruction on the affirmative defense of entrapment which fails specifically to place the burden of proof on the Government is deficient and cause for reversal, I dissent. The majority attempts to distinguish *United States v. Landry,* 257 F.2d 425 (7th Cir. 1958), and *United States v. Gardner,* 516 F.2d 334 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975), from this appeal, but the court today effectively overrules both of these opinions. The majority contends

that *Landry* and *Gardner* apply only in a "close case" on the entrapment issue and that the instant case is not close. Considering the instructions in their entirety, the majority concludes that "[a]lthough it is preferable to specifically allocate the entrapment burden of proof to the government in the entrapment instruction, we believe that the jury in this case was adequately and properly instructed." *Supra,* p. 1029. In other words the majority says that a defect in an affirmative defense instruction can be cured (in some cases) by considering the instructions as a whole. *Landry* and *Gardner* do not stand for this proposition.

The *Landry* court noted that:

The government in the main attempts to justify the instructions on the basis that they must be considered in their entirety, that the jury was told that the government had the burden of proving defendant guilty beyond a reasonable doubt and, further, that in any event no prejudicial error was shown. This is a stock argument and in some cases will suffice. In this case, however, where the record presents a close question on the issue of entrapment, we think the jury should have been instructed that the burden was upon the government to satisfy the jury beyond a reasonable doubt that the defendant was not entrapped into committing the acts alleged which, absent entrapment, constituted the offenses. See *O'Brien v. United States,* 7 Cir., 51 F.2d 674, 677; *Ryles v. United States,* 10 Cir., 183 F.2d 944, 945. We further are of the view that failure to so instruct the jury was prejudicial.

*United States v. Landry, supra,* 257 F.2d at 430. If *Landry* were the only case which dealt with this problem, the majority's contention might well be correct. But *Landry* does not stand alone. Addressing the same

---

**6.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

issue eighteen years later this court in *Gardner* stated that "[T]he jury was not misled and . . . the burden was properly placed" where the trial court's charge ". . . stated that the burden is *on the Government* to prove beyond a reasonable doubt that the defendant was not entrapped." *United States v. Gardner, supra,* 516 F.2d at 348 (emphasis in original). Without making any reference to whether a case was close, the *Gardner* court set out in the margin an entrapment instruction and explicitly stated:

> The instruction should also make clear that the burden is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped.

*Id.* at 348 n. 11. Based on the above the instructions given by the trial court in the present case were plainly erroneous.

Any doubts regarding this interpretation of *Landry* and *Gardner* should have been dispelled by our opinion in *United States v. Jackson,* 569 F.2d 1003 (7th Cir. 1978). In *Jackson* the court confronted the problem whether a trial court's failure to read an instruction regarding the Government's burden of proof on the issue of self-defense (an affirmative defense like entrapment) was plain error. The *Jackson* court found that defense counsel did not properly object to the instruction but held that:

> When the record contains evidence sufficient to support a finding of self-defense, it is the government's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *See Mullaney v. Wilbur,* 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *United States v. Corrigan,* 548 F.2d 879, 883 (10th Cir. 1977). Failure to give this instruction, if properly objected to, is ground for reversal.

*Id.* at 1008 n. 12. In the instant case the record does contain evidence sufficient to support a finding of entrapment, and defendant properly objected to the entrapment instruction as given. The fact that *Jackson* involved self-defense while this ap-

peal concerns entrapment is irrelevant. Both entrapment and self-defense are affirmative defenses and, for the purpose of the allocation of the burden of proof, they are indistinguishable. Thus the *Landry-Gardner-Jackson* trilogy requires reversal.

Assuming arguendo that a defect in an entrapment instruction can be cured by considering the instructions as a whole, the instructions here failed adequately to inform the jury that the prosecution's burden of proof applied to defendant's affirmative defense. Emphasis must be placed on "the importance of avoiding confusion as to the burden of proof when an affirmative defense such as entrapment, insanity, or self-defense is asserted." *United States v. Corrigan,* 548 F.2d 879, 881 (10th Cir. 1977). In *Corrigan* the court determined that the instructions taken as a whole did not cure a self-defense instruction which failed specifically to allocate the burden of proof to the Government. Finding the instructions inadequate the court stated:

> We are not saying the burden of proof should be reiterated in each separate instruction. In the case of an affirmative defense, however, the potential for misinterpretation is too great to permit ambiguity. An affirmative defense admits the defendant committed the acts charged, but seeks to establish a justification or excuse. In the absence of clear instructions, it is not unlikely that the jury would infer that the government has borne its burden and that it is up to the defendant to establish his justification. This is contrary to the standard of proof beyond a reasonable doubt on all elements of the offense; the defense of self-defense is directed toward negating the element of criminal intent. The best policy is summarized in *Notaro v. United States,* [363 F.2d 169, 175 (9th Cir. 1966)].
>
> > "The desire of a careful judge to avoid language which to him may seem unnecessarily repetitive should yield to the paramount requirement that the jury in a criminal case be guided by

instructions framed in language which is unmistakably clear."

*United States v. Corrigan, supra,* 548 F.2d at 883.

In light of the "paramount requirement" that affirmative defense instructions be "unmistakably clear," the instructions in the instant case were not sufficient. The majority, concluding that the instructions on entrapment were not "vague or ambiguous," bases its holding on a general statement extracted from the middle of the fifth instruction. This particular instruction states that the "burden of proof never shifts from the government to the defendant, and the defendant is not bound to prove his innocence, offer any excuse, or explain anything." This instruction does not explicitly cover the situation where, as here, the defendant does offer an excuse. And "[a] specific instruction which is defective in respect to the burden of proof is not remedied by correct general statements of the law elsewhere given in the charge unless the general statement clearly indicates that its consideration must be imported into the defective instruction." *DeGroot v. United States,* 78 F.2d 244, 253 (9th Cir. 1935). The general instruction relied on by the majority states three times that the Government's burden of proof applies to "every essential element and fact allegation of the charges in the indictment." But nowhere in this instruction is it "clearly indicated" this principle applies to the entrapment issue. Accordingly, the possibility that there was confusion or misunderstanding was not eliminated by this or any other general instruction. Furthermore, the fact that the burden of proof was reiterated in some of the other instructions (*e. g.,* instructions 5, 6, 11, and 12), but left out of the entrapment instruction easily could have led the jury to speculate that the burden of proof on the entrapment issue was different, that is, on the defendant rather than the Government.

Finally, this court's decision is in direct conflict with a recent Fifth Circuit decision.

*United States v. Wolffs,* 594 F.2d 77 (5th Cir. 1979). The court there held that it was reversible error not to instruct the jury specifically that the Government has the burden to prove beyond a reasonable doubt that there was no entrapment. I quote from the Fifth Circuit's opinion at length:

The language of an entrapment instruction must unmistakably apprise the jury that the burden is upon the government to prove beyond a reasonable doubt that, before anything at all occurred respecting the alleged offense for which the defendant is being prosecuted, the defendant was ready and willing to commit such crimes whenever an opportunity was afforded, and that government agents did no more than offer the opportunity. The instruction also must be unmistakably clear in informing the jury that if the evidence in the case leaves a reasonable doubt as to whether defendant had the predisposition to commit an offense of the character charged, apart from the government inducement or persuasion, the defendant must be found not guilty.

The government also argues on this appeal that the district court's general charge on the government's burden of proving guilt beyond a reasonable doubt cures any defect with the specific portion of the charge dealing with entrapment. This argument was also made and rejected in *Notaro.*

In reaching our conclusion, we have been mindful of [our] obligation to consider the instructions in their entirety. The jury was properly informed, in a general instruction, as to the burden of proof which rested upon the prosecution; however, we cannot assume that it carried the advice of the general instruction into application to the instruction emphasizing the specific elements of the defense [of entrapment]. The possibility that there was confusion or misunderstanding is strengthened, not eliminated, by view of the instructions as a whole.

363 F.2d at 176. We find the same to be true in the case sub judice. The absence of any "reasonable doubt" language within or in close proximity to the specific instruction on entrapment reasonably could have confused the jurors into believing that a lesser standard of proof applied to the defense. An example of "reasonable doubt" language sufficiently connected to the entrapment instruction is found in *United States v. Smith*, 588 F.2d 111 (5th Cir. 1979).

*Id.*

Having read all the instructions, I am left with the impression that the instructions on the entrapment issue were not "unmistakably clear." *United States v. Corrigan, supra*, 548 F.2d at 883. This impression is not changed by the majority's assertion that a flexible rule is needed to deal with the differing circumstances of particular cases. *Supra*, 1029. While it is true that two cases may have different circumstances, the burden of proof on the Government is identical if the record contains sufficient evidence to support a finding of an affirmative defense. The burden does not shift with "differing circumstances"; it is always the same and the rule governing instructions should be rigid. An entrapment defense may be so strong as to warrant a court to say that the defense has been proved as a matter of law; however, if there is any evidence of entrapment—and there was here—a correct entrapment instruction is required. The trial court failed to give this instruction and, accordingly, defendant's conviction should be reversed.