**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John SHERWOOD, Defendant-Appellant.**

No. 84–1719.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1985.

Decided Aug. 12, 1985.

---

Alan M. Freedman, Chicago, Ill., for defendant-appellant.

L. Felipe Sanchez, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant, John Sherwood, appeals his convictions for conspiracy to steal goods moving in interstate commerce, 18 U.S.C. § 371, for selling more than $5,000 worth of stolen merchandise belonging to Montgomery Ward Co., 18 U.S.C. § 2315, and for willful failure to appear for a preliminary hearing, 18 U.S.C. § 3150 (since amended and recodified as 18 U.S.C. § 3146). Sherwood raises jury instruction and ineffective assistance claims. We affirm.

### I.

The evidence presented at trial established that on May 26, 1983, Sherwood called undercover agent Frank Jury about a shipment of stolen merchandise from Montgomery Ward. Sherwood met agent Jury at a motel in Harvey, Illinois and negotiated an exchange of the merchandise for $18,000. On May 27, 1983, Sherwood, along with co-conspirator, Michael Lawrence, delivered the merchandise to undercover agents Jury and Michael Konkol.

Sherwood was arrested on September 1, 1983 and released on bond pending the preliminary hearing set for September 15, 1983. Sherwood failed to appear at the preliminary hearing and was arrested again on September 25, 1983. After being advised of his rights, the defendant knowingly and voluntarily executed the FO395 Interrogation and Advice of Rights Form. He then narrated to two FBI agents the theft and sale of the Montgomery Ward's shipment, as well as his involvement in numerous other criminal activities for which he was under investigation, including the theft of a K-Mart toy shipment, frozen french fries and Tator Tots, New Zealand beef, Firestone Tires, and an airplane.

Neither at trial nor on appeal has Sherwood taken issue with the above facts. Rather he relies on the defenses of entrapment and lack of willfulness. In support of these defenses Sherwood presented evidence that he suffered from alcoholism and other chemical dependency and a bipolar disorder, and that agent Jury repeatedly called him, thus provoking his illegal conduct.

### II.

Sherwood argues that the entrapment instruction was defective for failure to specifically state that the government had the burden of proving beyond a reasonable doubt that the defendant was not entrapped. Since defendant's trial attorney did not object to the entrapment instruction we review the failure to instruct on the entrapment burden of proof under the "plain error" standard. See Fed.R.Crim.P.

---

* The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation.

52(b). Plain error is an error so egregious that it resulted in "an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted." *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).

■ This circuit's en banc decision in *United States v. Johnson,* 605 F.2d 1025 (7th Cir.1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), provides the framework for analyzing a failure to instruct on the burden of proof in an entrapment instruction. The *Johnson* court held that although it is preferable that an entrapment instruction include a specific provision placing the burden of proof on the government, failure to do so does not automatically require reversal, even where the error was assigned at trial. *Id.* at 1028–29. Each case must be considered on its facts with an eye to the strength of the entrapment defense and considering the instruction as a whole. *Id.*

The evidence disproving entrapment was overwhelming. The defendant confessed to involvement not only in the charged crime but numerous others as well. Involvement in crimes similar to the one charged suggests a defendant's predisposition to committing the charged crime whether or not an undercover agent is involved. *See id.* at 1029 (defendant's prior involvement in drug deals undermines entrapment defense). The fact that Sherwood was capable of helping to plan and carry off the Montgomery Ward job, which required teamwork and planning, belies the suggestion that his alcohol/drug problems or bipolar disorder prevented him from making conscious, willful choices. Too, although agent Jury called Sherwood on several occasions, Sherwood initiated the call which lead directly to the sale of the stolen Ward's merchandise involved in this case. Finally, the government presented testimony of a close friend of Sherwood's suggesting that his alcohol problem was not severe. In view of the entire record, we do not think the entrapment issue close.

In addition, we do not find the failure to specifically allocate the burden of proof to the government on entrapment particularly disturbing in this case when considered in the context of the instructions as a whole. The entrapment instruction did not contain the slightest suggestion that entrapment was an affirmative defense which the defendant had to prove. To the contrary, the instructions contained repeated reminders that the burden of proof rested upon the government. The instructions began with a statement that the defendant was presumed innocent, that the government bore the burden of proof, and that the burden remained with the government throughout the case. Later the instructions stated that the government must prove beyond a reasonable doubt that defendant was aware of the common purpose and was a willing participant. The instructions ended with a charge that the jury must determine whether the government had proved its case beyond a reasonable doubt. Read as a whole, the district court judge's charge to the jury made it clear that the government bore the burden of proving beyond a reasonable doubt that defendant was not entrapped.

■ In view of the strong government case disproving entrapment, the portions of the instructions which made clear that the government bore the burden of proof throughout the case, and the lack of any suggestion that the defendant bore the burden on the entrapment issue, we hold that the failure to specifically instruct on the entrapment defense burden of proof did not result in a miscarriage of justice requiring reversal under the plain error test of *Silverstein,* 732 F.2d at 1349.

### III.

Sherwood also complains about the trial judge's failure to instruct on the definition of willfulness. The Committee on Federal Criminal Jury Instructions of the Seventh Circuit has recommended "that an instruction defining the word 'willfully' not be given unless the word is in the statute defining the offense being tried." Pattern

Jury Instruction 6.03 (7th Cir.1980); *accord United States v. Streich,* 759 F.2d 579, 585 (7th Cir.1985). Of the three statutes under which Sherwood was charged and convicted only section 3150 of Title 18, which concerns Sherwood's failure to appear at the preliminary hearing, contains the word "willful." As with the entrapment issue above, the defendant did not assign error on this point at trial; therefore, we apply the "plain error" standard in reviewing the failure to instruct on the definition of "willfulness."

█ The inclusion of "willfully" in the definition of the bail jumping statute has been interpreted to mean that "the person charged ... knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." *United States v. Hall,* 346 F.2d 875, 880 (2d Cir.) (quoting *American Surety Co. v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925) (Learned Hand writing)), *cert. denied,* 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); *see also Federal Criminal Jury Instructions of the Seventh Circuit,* 6.03 (citing *American Surety* in its discussion of the definition of "willfully"); S.Rep. No. 225, 98th Cong., 2d Sess. 31–32 *reprinted in* 1984 U.S.Code Cong. & Adm.News pp. 3182, 3214–15 (Judiciary Committee Report on Comprehensive Crime Control Act of 1984 approving the definition of "willfully" given in *United States v. Hall* in bail jumping cases). This definition gives willful an ordinary, everyday meaning rather than a legalistic meaning that incorporates the notion of specific intent. *Compare United States v. Hall,* 346 F.2d at 880 (using ordinary meaning of "willful" in prosecution for bail jumping) *with United States v. Pomponio,* 429 U.S. 10, 12–13, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976) (using legalistic meaning of "willful" in prosecution for willfully filing a false income tax return). In view of the ordinary meaning the term "willfully" has under section 3150 we do not think it likely that the failure to define the term confused the jury.

Furthermore, the evidence strongly supports the finding that Sherwood acted willfully in failing to appear. Sherwood clearly knew that he was supposed to appear for a preliminary hearing on September 15: Magistrate Sussman set the date for the preliminary hearing at the bond hearing on September 1, and defendant signed the personal recognizance bond which set forth the date and consequences of failure to appear. Moreover, defendant's former wife, Barbara Sherwood, phoned him on both September 14 and 15 to remind him of his preliminary hearing. Sherwood's knowledge of his appearance date makes this an even stronger case on "willfulness" than *United States v. Hall,* 346 F.2d at 880–81, where the court upheld the conviction under section 3150 even though there was no *direct* proof that defendant actually knew the appearance date. Although there was some evidence that defendant was drunk on the fifteenth, there was no evidence that he was so drunk that he could not appear or at least notify authorities of his inability. Furthermore, ten days lapsed between the preliminary hearing date and Sherwood's second arrest without Sherwood presenting himself to the court or to authorities, or communicating with them. Defendant never explained this extended failure to appear or communicate and it stretches credulity to believe that he was so drunk or so depressed during this entire ten-day period that he could not act according to the dictates of section 3150 and the personal recognizance bond.

█ In view of the plain and ordinary meaning given "willful" under section 3150 and the very strong evidence that Sherwood acted willfully in failing to appear we hold that there was no "plain error" in the failure to define willfully in the bail jumping charge.

## IV.

█ Grounding our adversarial system of criminal justice is the belief that "[t]ruth ... is best discovered by powerful statements on both sides of the question." *United States v. Cronic,* 466 U.S. 648, ——, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984) (quoting Lord Eldon). Accordingly,

"[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding ... [and] any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). Therefore, to prevail on an ineffective assistance claim a defendant must show that his lawyer's performance was deficient and that the deficiency prejudiced the outcome.

 Deficient performance is to be judged according to an objective standard of reasonableness, giving a high degree of deference to counsel, and making every effort to evaluate the conduct from counsel's perspective at the time without the distorting effects of hindsight. *See id.* The record shows that defense counsel's overall performance at the trial stage was vigorous and met or surpassed minimal professional standards. One indication of defense counsel's vigorous representation is the multitude of motions filed on Sherwood's behalf. Counsel filed twenty-one motions, including three pretrial motions, four motions for continuance, three motions to dismiss, two motions in limine, one motion each to sever, suppress, discover, and produce, a motion for a new trial, a sentencing motion-petition in mitigation, a motion to reconsider the motion for a new trial, a motion to permit defendant to remain in the Northern District of Illinois, and a motion for a stay pending appeal. With regard to the jury instructions Sherwood's defense counsel objected to eleven proffered government instructions, each time explicitly stating the reasons for her objections. Three of these objections were sustained.

It is true that with the benefit of hindsight Sherwood's appellate counsel and this court can go over the record with a fine-tooth comb in the peace and quiet of our offices and discover arguable errors in counsel's performance. It would be a rare

case were we unable to find any errors; even the most experienced trial counsel inevitably makes errors during the course of a week-long trial. But errors in defense counsel's representation do not necessarily create a Sixth Amendment infirmity. *Id.* 466 U.S. at ——, 104 S.Ct. at 2067. When viewed in the context of the entire criminal proceeding, the two errors alleged—failing to request an instruction defining "willful" or one specifically allocating the burden of proof on entrapment to the government— are relatively minor and, as we found in the "plain error" discussions above, did not prejudice the outcome of the trial. We therefore deny Sherwood's ineffective assistance claim.

The convictions are AFFIRMED.