UNITED STATES of America

v.

Donald WHOIE, Appellant.

No. 90–3022.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 30, 1990.

Decided Feb. 8, 1991.

M. Roy Goldberg (appointed by the court), for appellant.

John W. Kern, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Helen M. Bollwerk, and Mark J. Carroll, Asst. U.S. Attys., were on the brief, for appellee.

Before BUCKLEY, WILLIAMS, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge CLARENCE THOMAS.

CLARENCE THOMAS, Circuit Judge:

Donald Whoie was indicted on three counts of distributing cocaine base (crack), see 21 U.S.C. § 841(a), (b)(1)(A)(iii), (b)(1)(B)(iii), and six counts of using a telephone to facilitate his drug deals, see 21 U.S.C. § 843(b). Whoie insisted at trial that the government had entrapped him.

The jury found otherwise and convicted him on all nine counts.

In this appeal, Whoie argues for the first time that the district judge committed two errors in charging the jury. Because Whoie failed to object to the jury charge at trial, *see* Fed.R.Crim.P. 30, we review the district court's instructions only for plain error, *see* Fed.R.Crim.P. 52(b). The Supreme Court has made plain that courts of appeals should invoke the plain-error doctrine charily, *see United States v. Frady,* 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1591 & n. 14, 71 L.Ed.2d 816 (1982)—to correct only " 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted). With the Court's teaching in mind, we turn to the facts.

Agent Sam Gaye of the Drug Enforcement Administration, posing as a drug dealer named Muhammad, first met Whoie through a dealer named Joe. Gaye and Whoie soon exchanged telephone numbers, including the toll-free number for Whoie's beeper. In the five weeks before Whoie's arrest, Gaye called Whoie's home about twenty times. Whoie called Gaye's beeper or car phone more than three hundred times, sometimes as often as twenty times a day.

Six of Whoie's calls formed the basis of the telephone counts in the indictment. Two calls preceded each of three meetings between Whoie and Gaye, which formed the basis of the distribution counts. At the first meeting, Whoie and Gaye drove together from Whoie's home to a gas station, where Whoie sold Gaye just under fifty grams of crack for $1900. At the second meeting, Whoie and Gaye met at Whoie's home, where Whoie sold Gaye almost fifty-three grams of crack for $2000. Two days before the third meeting, Whoie asked Gaye during a phone call if he were willing to "do the big deal," and buy five hundred or a thousand grams of crack. They settled on two ounces, or about fifty grams, and later, in a hotel bathroom, Whoie sold Gaye almost fifty grams of crack for $2000, $1800 of which Gaye paid then, and $200 of which Gaye promised to pay later. When Gaye failed to pay the balance, Whoie threatened to kill him. According to Whoie, Gaye had threatened to kill *him,* as well as Joe, and Whoie said that he had sold crack to Gaye in order to save Joe's life.

Whoie's main defense at trial was entrapment, and he asked the district judge to charge the jury accordingly. The government proposed that the judge read pattern instruction number 5.05 from the third edition of *Criminal Jury Instructions for the District of Columbia* (published in 1978 by the D.C. Bar Association, and known by its cover as the Redbook). Whoie agreed. Adopting the Redbook text almost verbatim, the district judge instructed the jury on entrapment. We reproduce most of the instruction here and number the paragraphs for ease of reference.

[1] ... [E]ntrapment means that law enforcement officials ... induced or persuaded an otherwise unwilling person to commit an unlawful act. On the other hand, where a person is predisposed to commit an offense, that is, he is already ready and willing to violate the law, the fact that government officials ... merely afforded opportunities to violate the law does not constitute entrapment.

[2] ... Inducement by law enforcement officials to get somebody to violate the law may take many forms, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.... Law enforcement officials are not precluded from using artifice, stealth, stratagem such as use of decoys or undercover agents ..., provided that they merely afford opportunities or facilities for the commission of the offense to one predisposed already to commit it....

[3] ... They may properly offer or give the defendant money which is involved in the commission of the crime itself, and

they may properly instigate the offer of money to the defendant.

.        .        .        .        .

[4] In summary, ... if you find no evidence that the government induced the defendant to commit the crimes with which he is charged, there is no entrapment.... On the other hand, if you find some evidence that the defendant was induced to commit the offenses with which he is charged, you must then go on to consider whether the defendant was predisposed before the inducement to commit the offenses.

[5] If ... you find beyond a reasonable doubt that he was predisposed to commit the offenses, then you should still find that the defendant was not the victim of entrapment. But if the evidence in the case leaves you with a reasonable doubt whether the defendant was predisposed to commit the offenses, then you must find him not guilty.

During their deliberations, the members of the jury asked the judge to reinstruct them on entrapment. He read them almost exactly the same text.

Whoie first argues in his appeal that the district judge erred in letting the jury decide whether Whoie had produced enough evidence of government inducement. *See jury instruction* ¶¶ 2–4. This argument itself comprises two parts: Whoie contends that a district judge may *never* send the inducement question to the jury, but that even if a district judge may do so in some cases, in this case the judge should have decided that inducement existed as a matter of law. We disagree with Whoie's reading of the law as well as his spin on the facts.

■ The federal law of entrapment stems from case law that took final shape in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), and that confirms that the Constitution permits the government substantial leeway in setting "'trap[s] for the unwary criminal.'" *Russell*, 411 U.S. at 429, 93 S.Ct. at 1641 (quoting *Sherman v. United States*, 356

U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958)); *see id.* 411 U.S. at 431–32, 93 S.Ct. at 1642–43; *Hampton*, 425 U.S. at 488–89, 96 S.Ct. at 1649 (plurality opinion). The defense of entrapment has two elements: the government must have induced a defendant to commit a crime that the defendant was not otherwise willing to commit. *See Russell*, 411 U.S. at 428–30, 435–36, 93 S.Ct. at 1641–42, 1644–45; *Hampton*, 425 U.S. at 488–89, 96 S.Ct. at 1649 (plurality opinion). The Supreme Court has stressed that the defense centers on the latter element, a person's predisposition to commit a crime, and not on the government's conduct. Entrapment is not meant to "give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it [happens not to] approve." *Russell*, 411 U.S. at 435, 93 S.Ct. at 1644; *see id.* at 428–30, 93 S.Ct. at 1641–42; *Hampton*, 425 U.S. at 489, 96 S.Ct. at 1649. *See generally Mathews v. United States*, 485 U.S. 58, 62–63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988) (reviewing Court's entrapment jurisprudence).

■ The Supreme Court's emphasis on predisposition led some courts to adopt what they call the "unitary approach" to entrapment. In unitary-approach jurisdictions, a defendant who claims he was entrapped must produce evidence to the judge both of government persuasion and of his own "non-predisposition." *United States v. El–Gawli*, 837 F.2d 142, 145 (3d Cir.), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988). If the defendant carries his burden of production before the judge, the government bears the burden of persuading the jury "that it did not entrap the defendant." *Id.* In jurisdictions following the "bifurcated approach," in contrast, the jury, not the judge, decides whether the defendant has carried his burden of proving inducement, not just producing evidence of it. If the defendant has met his burden, the jury then goes on to decide whether the government has met its burden of proving predisposition. *See, e.g., United States v. Rivera*, 778 F.2d 591, 600–01 (10th Cir.1985), *cert. denied*, 475

U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 609 (1986).

Whoie argues here that the district judge erred because his instructions reflected precisely the bifurcated approach to the entrapment defense. Unfortunately for Whoie, the bifurcated approach reflects precisely the law of this circuit. *See United States v. Burkley*, 591 F.2d 903, 910–16 (D.C.Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979); *Hansford v. United States*, 303 F.2d 219, 222–24 (D.C.Cir.1962) (en banc). As we stated in *Burkley*, quoting Judge Learned Hand's opinion in *United States v. Sherman*, 200 F.2d 880 (2d Cir.1952):

> "[T]wo questions of fact arise [in entrapment cases]: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense. On the first question the accused has the burden; on the second the prosecution has it."

591 F.2d at 911 (quoting *Sherman*, 200 F.2d at 882–83); *see, e.g., United States v. Jenrette*, 744 F.2d 817, 821–22 (D.C.Cir. 1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); *see also United States v. Rubio*, 709 F.2d 146, 151 (2d Cir.1983). Contrary to Whoie's contention, therefore, a trial judge in this circuit who follows the bifurcated approach to the entrapment defense not only does not commit plain error, he does not err at all.

Whoie correctly notes that even under the bifurcated approach, a judge might nonetheless err by letting the jury decide whether the defendant had sustained his burden of proof. The *Burkley* court explained:

> [The defendant's] burden in requiring the prosecution to prove predisposition beyond a reasonable doubt is met by convincing the jury that there is *some* evidence of government "inducement".... The prosecution is free to rebut the defendant's evidence of inducement, and the jury, if it finds no evidence of inducement, should not reach the question of the defendant's predisposition. Contrari-

ly, if the evidence supports a finding of inducement as a matter of law, the trial judge should withhold the inducement question from the jury....

591 F.2d at 914–15 (footnotes omitted). Citing only the testimony that Gaye paid Whoie for the crack he bought, Whoie argues that the evidence in this case required a finding of government inducement as a matter of law.

We confronted a similar argument in *United States v. Kelly*, 748 F.2d 691 (D.C. Cir.1984), where a former member of Congress, stung by the FBI, appealed his conviction for assorted bribery charges. The defendant said that the government had entrapped him. Over the defendant's objection, the district judge decided to let the jury determine whether there was evidence of government inducement. On appeal, the defendant pointed out that the government had promised him $25,000 for attending a meeting with the FBI's fake sheikhs and $75,000 for introducing a certain bill in the House, and he argued that the district judge should have ruled that "some evidence" of inducement existed as a matter of law. *See id.* at 698. We described the evidence as "not so unequivocal to mandate one conclusion or another," and upheld the judge's decision to send the inducement question to the jury. *Id.*

Here, as in *Kelly*, the district judge properly read to the jury the Redbook definition of "inducement." *See id.; jury instruction* ¶¶ 2, 3. Consistent with Supreme Court precedent, the text of the Redbook (which we lauded in *Burkley*, 591 F.2d at 913–14, 913 n. 18) tries to help a factfinder determine whether " 'the Government's deception actually implant[ed] the criminal design in the mind of the defendant,' " *Russell*, 411 U.S. at 436, 93 S.Ct. at 1645, or whether "the Government merely afford[ed] opportunities or facilities for the commission of the offense," *id.* at 435, 93 S.Ct. at 1644 (citation omitted). Sometimes the evidence will point only to one answer. In many cases, however, the same evidence might lead reasonable people to different conclusions. This case, like *Kelly*, falls into the latter class. The district judge

properly left this question of fact for the jury. *See Mathews*, 485 U.S. at 63, 108 S.Ct. at 886.

We turn now to Whoie's second argument on appeal. As we have explained, in a bifurcated-approach jurisdiction (such as this one), once a defendant meets his burden of proving that the government persuaded him to commit a crime, the government must prove beyond a reasonable doubt that the defendant was ready and willing to do so. *See Burkley*, 591 F.2d at 914. *But cf. El–Gawli*, 837 F.2d at 145–48 (explaining that under unitary approach, government defeats entrapment defense *either* by proving predisposition *or* by disproving inducement). Although the Redbook instruction does mention the proper standard needed to prove predisposition, it does not state, in so many words, who must meet it. *See jury instruction* ¶¶ 4, 5. In Whoie's view, this omission makes the Redbook instruction "vague and ambiguous." Brief of Appellant at 16. Whoie argues that the district judge committed plain error by failing of his own accord to emend the Redbook, an error that in Whoie's view the judge compounded when he gave the same instruction in response to the jury's note. Again, we disagree.

In deciding whether jury instructions are erroneous, we always consider the whole instruction—not just the supposedly erroneous snippet. *See, e.g., United States v. Gambler*, 662 F.2d 834, 837 (D.C.Cir.1981); *United States v. Haldeman*, 559 F.2d 31, 112–14 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). In deciding whether jury instructions are plainly erroneous, we consider as well the lawyers' arguments and the evidence. *See, e.g., United States v. Norris*, 873 F.2d 1519, 1524–25 (D.C.Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 113, 107 L.Ed.2d 75 (1989). We have done so here and see no miscarriage of justice.

At trial, the district judge told the jury that "[t]he burden of proof never shifts," that "[t]he defendant doesn't have to prove his innocence," and that "[the] presumption of innocence remains with the defendant unless and until the government has proved this particular defendant in this case guilty beyond a reasonable doubt." *See United States v. Nixon*, 777 F.2d 958, 966–67 (5th Cir.1985). The entrapment portion of the instruction did not hint that the rule might be different in entrapment cases. *See id.* at 966 & n. 11; *United States v. Johnson*, 605 F.2d 1025, 1029 (7th Cir.1979) (in banc), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Nor did the government's lawyer. And the government introduced overwhelming evidence of Whoie's eagerness to sell crack, enough, we are certain, for the government to have carried the burden of proof it needed to defeat Whoie's entrapment defense. *See id.* at 1028–29; *United States v. Sherwood*, 770 F.2d 650, 652–53 (7th Cir.1985). The members of the jury may have asked for reinstruction on entrapment because they were confused about the burden of proof on predisposition, as Whoie argues; but they may have asked for reinstruction because they doubted whether Whoie had introduced even some evidence of inducement. Neither possibility changes our conclusion.

Because we hold that the district judge did not commit plain error, we need not decide whether, as Whoie argues, it is automatically reversible error for a district judge not to state expressly that the government bears the burden of proving predisposition beyond a reasonable doubt. *Compare United States v. Wolffs*, 594 F.2d 77, 83 (5th Cir.1979) ("The language of an entrapment instruction must unmistakably apprise the jury that the burden is upon the government.") (dictum) *with Nixon*, 777 F.2d at 965–66 (repudiating dictum in *Wolffs*) *and Johnson*, 605 F.2d at 1029 ("We see no need to adopt an inflexible entrapment instruction rule requiring that the entrapment burden always be specifically singled out and allocated to the government."). At the same time, however, with some evidence of inducement often (though not always) present, whether a defendant was ready to do wrong will in many entrapment cases pose the only disputed question of fact. *See United States*

**1486**

*v. Dunn,* 779 F.2d 157, 159 (2d Cir.1985). Juries are already told that they must acquit a defendant unless they find predisposition beyond a reasonable doubt. They should not have to guess that it is the government that must prove it. *See Johnson,* 605 F.2d at 1028; *United States v. Sonntag,* 684 F.2d 781, 787 (11th Cir.1982) ("[The] better practice would be to include ... a specific burden of proof instruction on entrapment."); *cf. Dunn,* 779 F.2d at 160 ("[D]istrict courts [should] not refer to the defendant's burden of proof with regard to inducement, since this tends to distract the jury from the real issue.").

We note Whoie's concerns about the Redbook instruction, and we recognize that other defendants will undoubtedly voice similar concerns in future cases. We thus think it useful to end with a suggestion. The Second Circuit, which also follows the bifurcated approach to entrapment, has endorsed an instruction that in relevant part tells the jury:

> If ... you find some evidence that a government agent initiated the criminal acts charged in the indictment, then you must decide *if the government has satisfied its burden to prove beyond a reasonable doubt that the defendant was ready and willing before the inducement to commit the crime.*

L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Model Federal Jury Instructions* No. 8-7, ¶ 8.07, at 8-30 (1990) (emphasis added), *cited with approval in Dunn,* 779 F.2d at 160. *But cf.* E. Devitt, C. Blackmar & M. Wolff, *Federal Jury Practice and Instructions* § 13.09, at 225 (3d ed. Supp.1990) (proposing language for unitary-approach jurisdictions); Federal Judicial Center, *Pattern Criminal Jury Instructions* No. 54, at 66 (1987) (same). In order to preempt the possibility of jury confusion, district judges in this circuit might want to conform the Redbook where appropriate. *See jury instruction* ¶¶ 4, 5. *See generally Dunn,* 779 F.2d at 160.

\* \* \* \* \* \*

*Affirmed.*