# GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

## v.

# LOUIS SMITH, Appellant

No. 90-3652

United States Court of Appeals

for the Third Circuit

November 22, 1991

DAVID RUDOVSKY, ESQ., Philadelphia, Pennsylvania, *for appellant*

AZEKAH E. JENNINGS, ESQ. (Argued) (United States Attorney's Office), St. Thomas, V.I., *for appellee*

BEFORE: BECKER, SCIRICA and ALITO, *Circuit Judges*

## OPINION OF THE COURT

SCIRICA, *Circuit Judge*

This case comes to us from the District Court of the Virgin Islands. Louis Smith was convicted of first degree murder, V.I. Code Ann. tit. 14, § 922(a)(1),[1] and unlawful possession of a firearm during the commission of a crime of violence, V.I. Code Ann. tit. 14, § 2253(a). He was sentenced to life imprisonment on the murder

---

[1] Under Virgin Islands law, murder is defined as "the unlawful killing of a human being with malice aforethought." V.I. Code Ann. tit. 14 § 921. First degree murder is defined as all murder which "(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or (2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem." V.I. Code Ann. tit. 14 § 922(a). All other kinds of murder are murder in the second degree. V.I. Code Ann. tit. 14 § 922(b). Voluntary manslaughter is defined as "the unlawful killing of a human being without malice aforethought . . . upon a sudden quarrel or heat of passion." V.I. Code Ann. tit. 14 § 924(2).

count, and five years' imprisonment on the firearm count. Smith now appeals, contending that the district court committed "plain error" in failing to instruct the jury on the burden of proof on self-defense, and challenging the denial of a motion for a new trial based upon the recantation of testimony by a witness. Alternatively, Smith argues that his counsel's actions with respect to these events deprived him of his right to effective assistance of counsel. We will vacate the convictions and remand for a new trial because we believe the failure to give complete jury instructions constitutes plain error on the facts of this case.[2]

## I.

Smith was charged with the shooting death of Dean Thomas. On the evening of November 7, 1988, Smith and Thomas argued over some money and a piece of crystal that Thomas allegedly had stolen from Smith. The trial testimony offered differing versions of what ensued next. Darryl Callwood, a defense witness, and Ira Callwood, a prosecution witness, gave accounts that were basically consistent with each other. Darryl Callwood testified that during the argument, Thomas threatened to shoot Smith and that Thomas pulled a gun from his waist. Smith and Thomas then began struggling, and the gun dropped to the ground. The two fought over the gun and one shot was fired. Ira Callwood characterized the altercation as an argument rather than a struggle. He heard the first shot, but did not note whether Thomas produced the gun initially, or whether the two fought over it. Smith obtained possession of the gun, and Thomas ran and hid behind a car. Smith was at the other end of the car, about 15 feet from Thomas. Smith then fired a shot at Thomas as Thomas was looking up from behind the car. The shot hit Thomas in the head and caused his death. Both Callwoods agreed that approximately ten seconds elapsed between the first and second shots.

Yelmo Chinnery, a prosecution witness, and Eustace Riley, a defense witness, contradicted these accounts. Chinnery testified that Smith took the gun from a nearby maroon car belonging to Darryl

---

[2] In light of our disposition on the jury instruction issue, we do not reach the issue of the recanted testimony or the allegations of ineffective assistance of counsel. Ordinarily, however, we require defendants to raise ineffective counsel claims in collateral proceedings rather than on direct review. See, e.g., United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir. 1989).

Callwood, and fired three direct shots at Thomas, missing with the first two. He stated that Smith chased Thomas with the gun for an extended period of time, saying "I am going to kill you." Riley corroborated the Callwoods' testimony that the gun fell to the ground during the initial altercation. But he testified that no shot was fired during that struggle and that Smith instead fired two direct shots at Thomas after retrieving the gun. However, Riley later recanted that testimony in chambers before the trial judge. Riley's in-chambers testimony corroborated that of the Callwoods. He stated that the first shot was fired during the struggle, and that he did not know who pulled the trigger. But he did not recant his testimony that Smith fired the fatal shot as Thomas looked up from behind the car.

Smith testified on his own behalf. He generally corroborated the testimony of the Callwoods with respect to the events surrounding the first shot. But he provided a somewhat different account of the circumstances surrounding the fatal shot. Smith testified that he shot Thomas as Thomas was moving toward him, in the belief that Thomas was reaching down for a weapon. He stated that Thomas "swung around the car and dive for something in his side like going for something and, you know, I been in the street most of my life. I know how people be fumbling to get some kind of a weapon." He never saw a weapon, however. Smith's trial testimony was consistent with the statement that he had provided the police shortly after the incident. In that statement, Smith stated that "I just fired it at him because I thought it was either him or me, I believe he was going to shoot me." Darryl Callwood testified that Thomas did not have a gun in his hand when Smith fired the fatal shot, and that Thomas tried to run away after Smith picked up the gun. Chinnery testified that Thomas always carried a knife, and was carrying it in the back of his waist at the time of the shooting. Ira Callwood testified that he saw a knife underneath Thomas after the shooting, and that Chinnery took something from Thomas's person that he presumed was the knife. There is no testimony that any weapon was found at the scene.

II.

Smith contends that the district court committed plain error when it failed to instruct the jury on the burden of proof on self-defense. The district court properly instructed the jury that "[t]he

government always has the burden of proof in a criminal trial and must prove the defendant's guilt beyond a reasonable doubt." The court also noted that "the defendant never has a burden of proving anything." Similarly, the court's opening instructions to the jury stated that "the burden of proof is on the government until the end of the case."

In addition, the court instructed the jury that the prosecution must prove each and every element of the crime beyond a reasonable doubt. On the charge of first degree murder, the jury was told that it must find beyond a reasonable doubt that Smith "unlawfully" killed Thomas. After setting forth the elements of each crime charged, the court stated that "[i]f all the elements of each count are established beyond a reasonable doubt, then it is your duty to find the defendant guilty." In its next sentence, the court stated that "[t]he defendant in the presentation of his evidence has raised, as a matter of defense what the law calls self defense." The court set forth the elements of self-defense, and instructed the jury that it could find self-defense only "if these requirements are met." But the court did not give a separate instruction regarding the burden of proof on this issue.

■ The parties apparently agree that when self-defense is raised by a defendant, Virgin Islands law requires the prosecution to prove its absence beyond a reasonable doubt. The Virgin Islands defines murder as the "unlawful" killing of another with malice aforethought. V.I. Code Ann. tit. 14, § 921 (1964). Killing in self-defense is defined as lawful and justifiable homicide, and self-defense is a statutory right. See id. §§ 927(2)(c), 43; see also id. § 928 (acquittal mandated when homicide is justified). Federal law also requires the prosecution to prove the absence of self-defense beyond a reasonable doubt. See, e.g., United States v. Alvarez, 755 F.2d 830, 842 (11th Cir.), cert. denied, 474 U.S. 905 (1985); United States v. Corrigan, 548 F.2d 879, 883 (10th Cir. 1977). Among the states, only Ohio and South Carolina place the burden of proving self-defense on the defendant. See Martin v. Ohio, 480 U.S. 228, 236 (1987). The remainder require the prosecution to prove the absence of self-defense.

■■ We exercise plenary review over the interpretation of Virgin Islands law. See, e.g., Saludes v. Ramos, 744 F.2d 992, 993–94 (3d Cir. 1984). Under Virgin Islands law, murder is defined as an unlawful killing of another, V.I. Code Ann. tit. 14, § 921 (1964); self-

defense is a statutory right; and killing in self-defense is "lawful." Id. §§ 927(2)(c), 43. We hold that in a murder prosecution under Virgin Islands law, once the defendant has properly placed self-defense in issue, the prosecution must prove its absence beyond a reasonable doubt.[3] Cf. Government of the Virgin Islands v. Frett, 14 V.I. 315, 330 (Terr. Ct. 1978) (in assault case, prosecution has burden of disproving self-defense beyond a reasonable doubt). This holding is in accord with other cases in which we have held that Virgin Islands law requires the government to disprove affirmative defenses once some evidence has been presented on the issue. See Government of the Virgin Islands v. Bellott, 495 F.2d 1393, 1397 (3d Cir. 1974) (insanity defense); Government of the Virgin Islands v. Smith, 278 F.2d 169 (3d Cir. 1960) (epileptic seizure).

We have held that it is reversible error for a district court to refuse to give a general instruction on self-defense when the evidence reveals a basis for the defense. Government of the Virgin Islands v. Salem, 456 F.2d 674 (3d Cir. 1972). We have not ruled upon whether the court must include a separate instruction on the burden of proving self-defense. In United States v. Corrigan, 548 F.2d 879 (10th Cir. 1977), the Court of Appeals for the Tenth Circuit held that when self-defense has been placed in issue, the jury must be instructed separately regarding the burden of proof on that issue. However, we are not faced with the situation presented in Corrigan, because in that case the defendant had properly objected to the court's instruction.

■ Here, Smith's counsel did not object at trial to the jury instructions on the grounds now raised. Consequently, a new trial can be granted only if the failure of the district court to provide a specific instruction constitutes "plain error." Fed. R. Crim. P. 52(b). Rule 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain errors are those that "undermine the

---

[3] The following sample jury charge is set forth in E. Devitt & C. Blackmar, Federal Jury Practice & Instructions, § 41.19 at 232 (3d ed. 1977):

If evidence of self-defense is present, the Government must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the Government has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty.

fundamental fairness of the trial and contribute to a miscarriage of justice." United States v. Young, 470 U.S. 1, 16 (1985). The Supreme Court has cautioned that the plain error exception is to be used "sparingly." United States v. Frady, 456 U.S. 152, 163 n.14 (1982). We have not established a rigid test for discerning plain error:

> Instead, we . . . look on a case-by-case basis to such factors as the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of judicial proceedings if the error stands uncorrected—all with an eye toward avoiding manifest injustice.

United States v. Thame, 846 F.2d 200, 205 (3d Cir. 1988). Another important factor is whether the error had "an unfair prejudicial impact on the jury's deliberations." Young, 470 U.S. at 17 n.14. Although these factors are guideposts and do not represent an exhaustive list, they provide a useful framework for examining the issue presented in this case.

■ Although we recognize the limited scope of our inquiry under Rule 52(b), we believe the failure to provide a burden of proof instruction on self-defense constitutes plain error on the facts of this case. We base our decision on a number of factors. Because the absence of self-defense could be considered an element of the crime of homicide in the Virgin Islands, the proper placement of the burden of proof on that issue implicates Smith's due process rights. Although the jury instructions did not explicitly shift the burden of proof to the defendant, a juror could reasonably have concluded that it was not necessary for the prosecution to prove the absence of self-defense beyond a reasonable doubt, and that the defendant bore the burden of proving the justification of self-defense instead.[4] Moreover, the omitted jury instruction could have been critical to the outcome of the case. The question of self-defense was central to the defendant's case, and the conflicting evidence reveals a basis for his self-defense theory. As a result, we believe the absence of a specific instruction had an unfair prejudicial impact on the jury's deliberations.

---

[4] Therefore, we are not presented with the situation addressed by the court in Bynum u. United States, 408 F.2d 1207 (D.C. Cir. 1968), cert. denied, 394 U.S. 935 (1969). In that case, "the charge, taken as a whole, made clear to the jury the Government's burden of showing beyond a reasonable doubt that defendant did not act in self-defense." Id. at 1208.

## A. SIGNIFICANCE OF THE INTEREST PROTECTED

We believe the proper placement of the burden of proof on self-defense is fundamental to a fair trial in this case, in part because the issue implicates the defendant's due process rights. As with the "harmless error" doctrine, the plain error doctrine requires that an error affect a "substantial right" of a defendant. See Fed. R. Crim. P. 52(a), 52(b). But plain error review, which applies in the absence of a proper objection, is more limited. For example, constitutional defects are subjected to greater scrutiny under the harmless error doctrine, which requires reversal unless the error is harmless beyond a reasonable doubt. When no objection is made at trial, however, we may affirm a conviction even when a constitutional error does not meet that standard. Thame, 846 F.2d at 207. Nevertheless, "[t]he constitutional nature of the error certainly makes it easier to conclude that fundamental fairness requires reversal." Id.

In United States v. Castro, 776 F.2d 1118 (3d Cir. 1985), cert. denied, 475 U.S. 1029 (1986), we held that it was not plain error to omit a separate instruction regarding the burden of proof on the "inducement" component of the entrapment defense. But we relied in part on the fact that no constitutional right was affected by the omitted instruction. Id. at 1129.[5] The plain error doctrine requires that a plain error affecting a "substantial right" of a defendant cannot be overlooked. Here, we believe the error inherent in the jury charge implicated due process concerns, and thus affected a substantial right of the defendant under Rule 52(b).

---

[5] In United States v. Santos, 932 F.2d 244 (3d Cir. 1991), relied upon by the dissent, we held that the trial judge did not commit plain error in charging the jury that the defendant had the burden of proving her duress defense by a preponderance of the evidence, after which the burden shifted to the government to disprove duress beyond a reasonable doubt. A correct charge would have required only that the defendant present some evidence of duress, after which the burden would shift to the government to disprove duress beyond a reasonable doubt.

We believe Santos is distinguishable. First, the erroneous instruction in Santos was given at the defendant's request. Second, the duress instructions in Santos correctly placed upon the government the ultimate burden of proving duress beyond a reasonable doubt; here, the instructions were ambiguous as to who had the ultimate burden of proof on self-defense. Finally, the defendant in Santos was convicted on seven counts of drug-related activity, and the erroneous instruction implicated due process concerns on only one of the seven counts.

■■ Proper instructions on the burden of proof are a fundamental aspect of a fair trial. The prosecution must prove every element of the crime charged beyond a reasonable doubt, and diminishing this burden violates the defendant's right to due process. In re Winship, 397 U.S. 358 (1970). Legislatures have some leeway to require defendants to prove affirmative defenses. At least when a statute does not define a crime to include the absence of an affirmative defense, the state may require the defendant to prove that defense. See Patterson v. New York, 432 U.S. 197 (1977) (state may require defendant to prove defense of extreme emotional disturbance where such requirement would not negate any element of murder). Furthermore, a state may treat the absence of an affirmative defense as an element of a crime for some purposes, but not others. Engle v. Isaac, 456 U.S. 107, 120 (1981).

■ The Supreme Court has held that a state may place the burden of proving self-defense on the defendant, but only where such placement does not shift the prosecution's burden on any element of the crime. Martin v. Ohio, 480 U.S. 228 (1987). But because the law of the Virgin Islands specifically includes "unlawfulness" as an element of the crime of murder and provides that killing in self-defense is "lawful," shifting the burden of proof on this question implicates Smith's due process rights. See Holloway v. McElroy, 632 F.2d 605, 619–36 (5th Cir. 1980) (because Georgia defines voluntary manslaughter to include element of unlawfulness, jury instructions which required the defendant to prove self-defense contravened due process), cert. denied, 451 U.S. 1028 (1981). But see Smart v. Leeke, 873 F.2d 1558 (4th Cir. 1989) (en banc) (reading Martin to permit states to require the defendant to prove self-defense even where an element of the crime implies the absence of self-defense). In Martin, the Supreme Court rejected the contention that because under Ohio law any murder must be unlawful, a valid claim of self-defense would negate an element of the crime. 480 U.S. at 235. However, the Court specifically relied on state court interpretations of Ohio law, which did not include the absence of self-defense in the definition of unlawfulness. Id.

The element of "unlawfulness," as we have interpreted that term under Virgin Islands law, distinguishes the statute at issue here from that in Martin. Moreover, Martin stressed the Court's prior reluctance to interfere with a state's definition of crimes and its allocation of burdens of proof. Id. at 232. This factor is not impli-

cated here because Virgin Islands law does not require the defendant to prove self-defense. Because the constitutional nature of an error is not dispositive under Rule 52(b), we need not base our decision on whether Smith's due process rights were contravened. However, we believe that the constitutional dimension of the omitted instruction adds to the significance of the interest protected. Cf. United States v. Small, 472 F.2d 818, 819–20 (3d Cir. 1972) (failure to instruct on essential element of conspiracy was plain error, in part because the error "cannot be assumed to have been unimportant to the defendant's due process rights."). In similar circumstances, we have found plain error where the interest protected was far less substantial. See Beardshall v. Minuteman Press Int'l, Inc., 664 F.2d 23, 26–27 (3d Cir. 1981) (in civil case, it was plain error to instruct jury that plaintiff need only prove fraud by preponderance of evidence rather than clear and convincing evidence).

## B. SERIOUSNESS OF THE ERROR

The district court did not explicitly instruct the jury that the defendant bore the burden of proof on the question of self-defense. It gave a general self-defense charge that did not include a separate burden of proof instruction. Nevertheless, we believe the instructions taken as a whole could have led a juror to reasonably conclude that the defendant had the burden of proving self-defense. The court informed the jury that "[i]f all the elements of each count are established beyond a reasonable doubt, then it is your duty to find the defendant guilty." In the next sentence, however, the court stated that "[t]he defendant in the presentation of his evidence has raised, as a matter of defense what the law calls self-defense." The court stated the elements of self-defense, and instructed the jury that it could find self-defense only "if these requirements are met."

■ This ordering of instructions raises the implication that self-defense is completely separate from the elements on which the prosecution bears the burden of proof, and instead is a matter that involves only the defendant's presentation of evidence. A reasonable interpretation of the charge is that the prosecution must prove the elements of its case beyond a reasonable doubt, but that the defendant must prove the elements of his own self-defense case. See Corrigan, 548 F.2d at 883 (Instruction that "'the defendant has raised the defense of self defense' . . . could easily be taken to mean that since the defendant raised the issue, it is his burden to prove it

to the jury's satisfaction."). Although such an interpretation does not necessarily follow from the court's instructions, the possibility that the jury misunderstood the charge contributes to the seriousness of the error.[6]

In Guthrie v. Warden, Maryland Penitentiary, 683 F.2d 820 (4th Cir. 1982), the United States Court of Appeals for the Fourth Circuit held that the district court had erred in refusing to issue a writ of habeas corpus based on the trial judge's constitutionally inadequate charge on the issue of self-defense.[7] In that case, as here, the instructions on self-defense did not specifically allocate the burden of proof.[8] "[I]n the absence of a specific instruction to the contrary," the court found that the jury likely believed Guthrie bore the burden of proving self-defense. Id. at 825. Relying on Corrigan, the court held that the charge, even if only ambiguous as to the burden of proof on self-defense, was fatally defective. Id. at 825 n.7. The court cited Corrigan for the proposition that "jury instructions

---

[6] This case is therefore unlike Castro. In that case, we relied in part on the fact that the district court gave a separate burden of proof instruction on the "predisposition" component of the entrapment defense. 776 F.2d at 1129. Here, by contrast, there was no separate instruction on any component of the self-defense issue from which the jury could have inferred the correct burden of proof.

[7] Like an appellant who fails to raise an objection at trial, a habeas corpus petitioner faces a heavy burden in challenging allegedly defective jury instructions. "The petitioner must show that 'the offending instruction is so oppressive as to render a trial fundamentally unfair.'" Morris v. Maryland, 715 F.2d 106, 108 (4th Cir. 1983) (citations omitted) (following Guthrie and granting habeas relief based on jury charge that unconstitutionally placed upon petitioner burden of proving excuse of accident). This standard is strikingly similar to the plain error requirement that the error must "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." United States v. Young, 470 U.S. 1, 16 (1985).

[8] The self-defense charge in Guthrie read:

If you find that the defendant in this case had reasonable ground to believe, and did in fact believe, that he was in imminent danger of suffering serious injury, or death, at the hands of the deceased at the time he killed him; and if you further find that any reasonable and prudent person similarly situated, with all the attending circumstances, would have believed that he was in imminent danger of suffering serious bodily injury, or death, at the hands of the deceased, then the defendant would be entitled to be acquitted.

683 F.2d at 824. The Guthrie court found that "[t]he language of the charge with respect to the burden of proof [on self-defense] is relatively neutral." Id. at 825.

regarding self-defense pose a delicate problem requiring extraordinary caution because the defense admits the accused committed the act but seeks to establish justification or excuse." Id. (citing Corrigan, 548 F.2d at 883). This is especially true where self-defense is the only defense alleged at trial.

■ The error was critical here because Smith's entire case rested on his claim of self-defense. In United States v. Corrigan, 717 F.2d 84 (3d Cir. 1983), we held that it was plain error to fail to give a general instruction on the effect of character evidence, in part because the question of character evidence was central to defendant's case. Id. at 92. Here, self-defense was Smith's *entire* case. Moreover, the conflicting evidence on the issue increased the importance of the missing jury instruction. In Castro, we relied in large part on the fact that the defendant had not made out a strong case for entrapment. 776 F.2d at 1129-30. See also United States v. Jackson, 569 F.2d 1003 (7th Cir.) (it was not plain error to fail to instruct on burden of proof on self-defense, in part because defendant did not present a strong case), cert. denied, 437 U.S. 907 (1978). Here, we believe that a fair reading of the evidence reveals a plausible case for self-defense which, combined with the possibility that the jury misallocated the burden of proof, requires that Smith be accorded a new trial.

Self-defense hinges on the reasonableness of the defendant's subjective beliefs. As the district court charged the jury:

> If the defendant had a reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, he would be justified in using deadly force in self defense, even though it may afterwards have turned out that the appearances were false.

See also V.I. Code Ann. tit. 14, § 43 (1964) (statutory definition of self-defense).

There was uncontroverted testimony that Thomas was the initial aggressor and threatened to kill Smith. Smith testified that Thomas was moving toward him, and that he believed Thomas was reaching for a weapon. There was also testimony that Thomas was known to carry a knife. In view of these circumstances, it would not be unreasonable for Smith to have believed that Thomas was carrying a second weapon. As a reviewing court, it is not our function to decide whether the evidence was sufficient to create reason-

343

able doubt as a matter of law. But because the jury might have labored under a false conception regarding the burden of proof, we believe that the lack of a specific charge had an unfair prejudicial impact on the jury's deliberations.

Smith's account of the fatal shot was not so undermined by contrary evidence as to render immaterial the burden of proof on the question of self-defense. Although Darryl Callwood testified that Thomas did not have a gun in his hand when he was shot, and was generally trying to get away from Smith after Smith obtained the gun, he neither contradicted nor confirmed Smith's testimony that Thomas was moving forward and appeared to be reaching for a weapon when he was shot. Yelmo Chinnery did contradict Smith's story, but his testimony was effectively placed in doubt. Chinnery testified that Smith took the gun from Darryl Callwood's car and fired three direct shots at Thomas. But several witnesses testified that the gun fell to the ground during the initial altercation, and no other witness heard three shots. In addition, several witnesses testi-, fied that the car from which Smith allegedly retrieved the gun was not present at the time. Moreover, Chinnery was a convicted felon and a close friend of Thomas, and admitted to heavy use of crack cocaine shortly before the incident.

Similarly, we do not believe the testimony of Eustace Riley significantly affects our plain error inquiry. Contrary to the Callwoods, Riley testified at trial that no shot was fired during the struggle, but rather Smith fired two direct shots as Thomas was hiding behind the car. However, that afternoon, before the court had charged the jury, Riley recanted in chambers a portion of his testimony. He stated that he had received a threatening telephone call on the evening before he testified. The caller told him to testify that Smith fired two shots instead of one. He thought the caller was Thomas's brother, but was not certain.

In chambers, Riley recounted what he claimed was his actual recollection of the shooting. He stated that one shot had been fired during the struggle between Smith and Thomas. He recounted that

> [Smith] spin around and hit Dean, a shot went off. The gun fall. Two of them dive for the gun. [Smith] pick it up, and when Dean was the back of the car, he lift up his head and [Smith] pick it up, and when he pick it up and fire, I see Dean drop.

Riley indicated that the only discrepancy between his in-chambers and trial testimony concerned the number of shots fired by Smith.

He stated in chambers that he didn't know who had fired the first shot. Despite the fact that the jury had not yet been charged when Riley recanted his testimony, Smith's counsel made no attempt to recall Riley as a witness. Rather, after the verdict, counsel moved for a new trial because of Riley's recantation.

Riley's trial testimony arguably cast doubt upon Smith's self-defense theory, because if Smith fired two direct shots it could have implied a greater degree of malice. Although Riley's in-chambers testimony was unsworn, and Smith's counsel made no attempt to recall him, we believe his recantation renders his trial testimony less reliable for purposes of our plain error inquiry. We do not hold that Smith is entitled to a new trial on the basis of this recantation. Rather, we find only that because of the inconsistencies in Riley's accounts, his trial testimony does not markedly decrease the prejudice inherent in the jury charge. However, even if we were to consider only Riley's trial testimony, we would not find that it significantly, strengthened the case against self-defense. Witnesses for both the defense and the prosecution corroborated the defendant's account that only one direct shot was fired.

In short, we believe the record reflects a plausible case for self-defense, from which the jury, had it been properly instructed, could have found reasonable doubt on the issue of self-defense. Therefore, the trial court's failure to instruct the jury on the burden of proof on this issue constituted a fundamental error. Cf. United States v. Jackson, 569 F.2d 1003, 1011 (7th Cir.) (Tone, J., dissenting), cert. denied, 437 U.S. 907 (1978) ("Once it is conceded . . . that there is sufficient evidence to support a finding of self-defense, it follows that the issue was for the jury and not for us."). The conflicting nature of the trial testimony made a separate burden of proof instruction even more imperative.

## C. OBVIOUSNESS OF THE ERROR

██ In the absence of a proper objection, we may notice errors if they are "obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160 (1936). We do not believe the error in this case seriously undermined the integrity or reputation of judicial proceedings. Cf. United States v. Young, 470 U.S. 1, 33 n.16 (1985) (Brennan, J., dissenting) ("[C]ertain extreme circumstances, such as egregious misbehavior or a pattern and practice of intentional prosecutorial conduct that has not been deterred

through other remedies, may well so seriously undermine the integrity of judicial proceedings as to support reversal under the plain-error doctrine.")

■ However, we believe the need for a separate instruction regarding the burden of proof on self-defense is sufficiently obvious to permit us to consider its absence on appeal. As we have noted, the burden of proof is a fundamental matter in a criminal case. It is somewhat counter-intuitive that the prosecution bears the burden of disproving affirmative defenses, because unlike other aspects of a trial, the defendant bears the burden of production on these issues. Consequently, the possibility that the jury will misallocate the burden of proof is readily apparent. When self-defense is critical to a defendant's case, the inherent potential for confusion highlights the need for a separate burden-of-proof instruction. Cf. United States v. Logan, 717 F.2d 84, 88 (3d Cir. 1983) (failure to instruct on the effect of character evidence was plain error, in part because of the unique nature of such evidence).

### III.

A number of factors lead us to conclude that a new trial is required in this case. The absence of a burden of proof instruction on the question of self-defense affected substantial rights of the defendant, especially because his entire case rested on this issue. The jury charge could reasonably be construed as implying that the burden of proving self-defense rested with the defendant. Moreover, the evidence reveals a plausible basis for the defendant's theory. Finally, the error in this case is sufficiently fundamental to permit us to notice it on appeal.

In light of these factors, we hold that the trial court's failure to instruct the jury that the prosecution bears the burden of disproving self-defense beyond a reasonable doubt undermined the fundamental fairness of the trial, and constituted plain error. We emphasize that we do not invoke the plain error exception lightly. The unique facts of this case justify a limited exception to the general rule that a contemporaneous objection to jury instructions must be made at trial. We will therefore vacate the defendant's convictions and remand to the district court for a new trial.[9]

---

[9] Our decision applies to Smith's conviction for unlawful possession of a firearm during the commission of a crime of violence, as well his murder conviction. V.I. Code Ann. tit. 14, § 2253(a) provides a minimum penalty of six months'

ALITO, *Circuit Judge,* dissenting:

In my view, the district court did not commit "plain error" by failing to give a specific instruction stating that the prosecution was required to prove beyond a reasonable doubt that the homicide charged in this case was not committed in self-defense. As the majority notes, the district court told the jury that the prosecution was required to prove guilt beyond a reasonable doubt (J.A. at 121) and that "the defendant never has a burden of proving anything." (J.A. at 122.) The court also gave a correct instruction on the elements of self-defense. (J.A. at 134–37.) Because the defendant's attorney did not object to the court's charge or request an additional instruction emphasizing that the prosecution's burden applied to the elements of self-defense, no reversible error occurred.

Rule 30 of the Federal Rules of Criminal Procedure generally bars a party from challenging a jury charge on appeal unless the party made a timely and specific objection before the trial court. The doctrine of "plain error" in Fed. R. Crim. P. 52(b) "somewhat tempers the severity of Rule 30," but Rule 52(b) "is to be used spar-

---

imprisonment for the unlawful possession of a firearm, and a minimum penalty of five years' imprisonment if the possessor is a convicted felon, or the unlawful possession occurs during the commission of a crime of violence as defined in V.I. Code Ann. tit. 23, § 451(e). In Government of the Virgin Islands v. Castillo, 550 F.2d 850 (3d Cir. 1977), we held that the enhanced penalty for convicted felons does not constitute a separate offense, but rather is only an additional factor affecting sentencing. Id. at 853 n.5. We did not decide whether the language relating to the commission of a crime of violence has the same effect. However, we noted that the crime of violence language "might well be held" to constitute a separate offense, rather than merely a factor leading to enhanced sentencing. Id. We similarly doubt that this language is only a sentencing factor that might permit us to uphold Smith's § 2253(a) conviction despite the reversal of his murder conviction. But this issue has not been raised, and we do not reach it. In accordance with proposed instructions submitted by the government, the judge instructed the jury that commission of a crime of violence was an element of the § 2253(a) count. The government did not request any instruction on the lesser offense of unlawful possession. Because we remand for a new trial on the murder count, we must also remand for a new trial on the firearm count. The information specifically listed murder as the crime of violence, and there is no claim that Smith committed any other such crime. Cf. Government of the Virgin Islands v. Sealey, 18 V.I. 425 (D.V.I. 1981) (conviction for unlawful possession of firearm during commission of a crime of violence upheld even though defendant was acquitted on accompanying assault charges, where evidence supported finding of guilt on an uncharged offense).

347

ingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Frady, 456 U.S. 152, 163 & n.14 (1982). Its proper role is "to correct particularly egregious errors" and to "redress . . . miscarriages of justice." Id. at 163. It is intended to correct errors that are "obvious" or that "otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160 (1936). "By its terms, recourse may be had to [Rule 52(b)] only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." United States v. Frady, 456 U.S. at 163. See also United States v. Young, 470 U.S. 1, 15 (1985); United States v. Wright, 921 F.2d 42, 46 (3d Cir. 1990), cert. denied, 111 S.Ct. 2803 (1991); United States v. Sandini, 888 F.2d 300, 309 (3d Cir. 1989), cert. denied, 110 S.Ct. 1831 (1990); United States v. Anderson, 859 F.2d 1171, 1175 (3d Cir. 1988); United States v. Thame, 846 F.2d 200, 204–05 (3d Cir.), cert. denied, 488 U.S. 928 (1988).

The Supreme Court has also observed that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court" and that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 154, 155 (1977). See also United States v. Castro, 776 F.2d 1118, 1129 (3d Cir. 1985), cert. denied, 475 U.S. 1029 (1986).

Under these well-established principles, there was no plain error here. Certainly it cannot be said that any error in this case was "obvious" or "so 'plain' that the trial judge and prosecutor were derelict in countenancing it." Frady, 456 U.S. at 163. Trial judges generally are not required to instruct juries using any particular words so long as the essential points of law are adequately conveyed, see, e.g., In re Braen, 900 F.2d 621, 626 (3d Cir 1990), cert. denied, 111 S.Ct. 782 (1991), and until today there was little support in federal case law for the rule that a trial judge is obligated to give a specific instruction linking the prosecution's burden of proof and the elements of self-defense. The existing federal cases were these. In United States v. Jackson, 569 F.2d 1003 (7th Cir.), cert. denied, 437 U.S. 907 (1978), a divided panel held that the failure to give such an

instruction was not plain error in that case.[10] In Bynum v. United States, 408 F.2d 1207, 1208 (D.C. Cir. 1968), cert. denied, 394 U.S. 935 (1969), the court succinctly rejected a plain error argument based on a jury charge that allegedly did not "make clear that the prosecution's burden of proving guilt beyond a reasonable doubt extended to the self-defense question." The court based its decision on "the charge, taken as a whole" (id.), and thus apparently did not require a specific instruction. Finally, in United States v. Corrigan, 548 F.2d 879 (10th Cir. 1977), where the defendant preserved the issue for appeal by "submitting his proposed instructions and objecting to those given by the [trial] court" (id. at 881), the court of appeals held that the trial court's instructions were defective. The court of appeals noted, however, that while "a specific statement of the burden of proof in the defense instruction is preferable [, i]ts omission . . . is not reversible error per se."[11] Id. at 882. In light of the discretion generally enjoyed by trial judges with respect to the framing of jury instructions and the holdings and opinions in the few federal cases concerned with the specific issue involved here, it simply cannot be maintained, in my view, that a defendant's entitlement to a specific instruction on the burden of proof concerning self-defense was "so 'plain' that the trial judge . . . was derelict" in failing to give such an instruction without any request from defense counsel. Frady, 456 U.S. at 163.

In finding plain error in this case, the majority notes that "the proper placement of the burden of proof on self-defense . . . impli-

---

[10] Cf. United States ex rel. Huckstead v. Green, 737 F.2d 673 (7th Cir. 1984) (habeas petitioner denied relief although there was no specific instruction on burden of proof regarding self-defense).

[11] Guthrie v. Warden, Maryland Penitentiary, 683 F.2d 820 (4th Cir. 1982), upon which the majority relies (maj. typescript 15–16 & nn.6–7), seems to me to be inapposite. In that case, a divided panel held that the jury instruction on self-defense was erroneous because it improperly placed the burden of proof on the habeas petitioner. The decision did not suggest that correct instructions must be supplemented with an instruction specifically stating that the prosecution bears the burden of proof on this issue. Since the present case concerns the need for a specific supplementary instruction to complement accurate general instructions on the burden of proof, Guthrie is clearly distinguishable. Moreover, the Guthrie court did not consider any procedural requirement analogous to the federal plain error rule because a state statute excused the failure to object under the circumstances of that case. See 683 F.2d at 823 n.3; Guthrie v. Warden, Maryland Penitentiary, 518 F. Supp. 546, 550–51 (D. Md. 1981).

cates the defendant's due process rights" (majority typescript at 10). While I certainly agree that it is appropriate to consider whether an alleged plain error implicates a constitutional right, this factor alone is not dispositive. United States v. Thame, 846 F.2d at 207. Indeed, it seems to me that the alleged error in the present case implicates the same constitutional right as the error that we recently refused to redress under Rule 52(b) in United States v. Santos, 932 F.2d 244, 247–50 (3d Cir. 1991). In that case, we held that the district court erred in charging the jury that a defendant who raises the defense of duress must initially prove the elements of that defense by a preponderance of the evidence. Id. at 249. Instead, we held, once a defendant adequately raises this defense, the prosecution must disprove duress beyond a reasonable doubt. Id. In addition, we stated that due process requires this allocation of the burden of proof for every offense requiring specific criminal intent. Id. We noted that the defendant in Santos had been convicted of at least one offense requiring proof of specific criminal intent, i.e., conspiracy to distribute and to process with intent to distribute cocaine. Id. Nevertheless, we held as follows:

> We do not believe that plain error occurred in this case. See generally Martin v. Ohio, 480 U.S. 228, 233–34 . . . (1987) (no violation of Fourteenth Amendment's due process clause occurred where the defendant had to prove affirmative defense by a preponderance of the evidence since jury was instructed to consider all evidence in determining whether prosecution proved elements of crime beyond a reasonable doubt).

Santos, 932 F.2d at 250. Thus, we held that no plain error occurred even though the instruction unconstitutionally placed the burden of proving a particular affirmative defense on the defendant. And the case we cited, Martin v. Ohio, supra, concerned the defense of self-defense.

The other chief factor on which the majority relies in this case is the possibility of prejudice to the defendant. In my view, however, the likelihood that the defendant was prejudiced by the lack of a specific instruction is not great and is insufficient to establish the presence of plain error. As previously noted, the trial court gave proper general instructions on the prosecution's burden of proving guilt beyond a reasonable doubt. (J.A. at 121–27). We have previously stated that correct general instructions concerning the prosecution's burden of proof tend to show that the omission of a

350

specific burden of proof instruction related to an affirmative defense is not plain error. United States v. Castro, 776 F.2d 1118, 1129 (3d Cir. 1985), cert. denied, 475 U.S. 1029 (1986); United States v. Conversano, 412 F.2d 1143, 1149 (3d Cir.), cert. denied, 396 U.S. 905 (1969).

Moreover, several of the court's instructions in this case should have prevented the jury from mistakenly believing that the prosecution's burden did not apply to the elements of self-defense. The court specifically instructed the jury that the prosecution must prove every element of the charged offenses beyond a reasonable doubt (J.A. at 126) and that it could not find the defendant guilty of first degree murder unless it found that he killed the victim "unlawfully." (J.A. at 130.) The court further stated that "the defendant never has a burden of proving anything." (J.A. at 122.) If the jury followed these instructions, it could not have placed the burden of proving self-defense on the defendant.

Closing arguments by counsel for both sides also emphasized that the prosecution had the burden of proof at all times. In particular, defense counsel stressed that this burden "stays with the government throughout these proceedings. It . . . starts with the government and ends with the government." (J.A. at 193.) In Jackson, 569 F.2d at 1010, the Seventh Circuit relied on similar closing statements by counsel in holding that the absence of the specific instruction at issue there was not plain error.

To be sure, it is *possible* that the jury might have been confused about the burden of proof regarding self-defense. As the majority notes, the trial court did state that the defendants had "raised" the "defense" of self-defense (J.A. at 134), and I agree that a reference to a "defense" raised by the defendant *might* lead a juror to think that the defendant was obligated to prove this defense—although I suspect that this reasoning is less likely to occur to a lay person than a lawyer familiar with the burden of proving affirmative defenses in civil cases or in old criminal cases. The statement that self-defense could be found if its elements "[were] met" (J.A. at 135) also had some potential to mislead. But it seems to me unlikely that a jury would follow these spurious hints, rather than the court's unambiguous statement that "the defendant never has a burden of proving anything" (J.A. at 122), without at least asking for a clarification. In any event, the mere possibility of prejudice to the defendant is not enough to show plain error. Even if an error is not

"harmless beyond a reasonable doubt," it does not follow that the error is "sufficiently major that a miscarriage of justice will result if the conviction is not reversed." United States v. Thame, 846 F.2d at 207. Thus, I find no plain error, and I therefore respectfully dissent.