**UNITED STATES of America, Appellee,**

v.

**Eric T. McKINLEY, Appellant.**

**No. 94–3088.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1995.

Decided Dec. 1, 1995.

Walter S. Booth, Bethesda, MD, appointed by the court, argued the cause and filed the briefs, for appellant.

Pamela S. Satterfield, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

Appellant Eric T. McKinley appeals his conviction for unlawful distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii) (1988). Appellant was indicted pursuant to a drug investigation during which an undercover officer, Thomas K. Stephensen, met appellant several times during the six days preceding the consummation of the drug transaction that resulted in the indictment. On at least two of those occasions, the officer expressed an interest in purchasing drugs and requested appellant's assistance. On the day of the drug transaction, appellant initiated a discussion about assisting Stephensen in purchasing drugs, located a seller, Rommell Buchanan, and arranged a meeting between Stephensen and Buchanan. The drug sale took place in appellant's bedroom in his mother's apartment. Both appellant and Buchanan were charged with unlawful distribution, and at trial, the prosecution proceeded against appellant on the theory that he had aided and abetted the commission of the crime.[1]

On appeal, appellant cites as error the District Court's refusal to give a jury instruction on the defense of entrapment or allow defense counsel to argue entrapment to the jury. Under the law of entrapment in this circuit, "once a defendant meets his burden of proving that the government persuaded him to commit a crime, the government must prove beyond a reasonable doubt that the defendant was ready and willing to do so." *United States v. Whoie*, 925 F.2d 1481, 1485 (D.C.Cir.1991). Normally, "the jury, not the judge, decides whether the defendant has carried his burden of proving inducement." *Id.* at 1483. However, a defendant only "is entitled to an entrapment instruction when[] there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *see also United States v. Burkley*, 591 F.2d 903, 914 (D.C.Cir.1978) ("[W]ith respect to the evidentiary threshold in obtaining an entrapment instruction ..., the trial judge must instruct the jury on entrapment *if* there is any evidentiary foundation for a finding of government inducement...." (em-

---

1. *See* 18 U.S.C. § 2(a) (1988) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

phasis added)), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979).

■ In this case, we find that appellant failed to raise a jury question on the issue of inducement. Although repeated solicitations by the Government, coupled with persuasive overtures or evidence of the defendant's reluctance, may in some cases warrant an entrapment instruction, appellant has not demonstrated that Stephensen made overtures involving threat or reward prior to the day of the drug transaction, when appellant himself initiated the issue of assisting the officer in purchasing drugs. Moreover, there is no indication that appellant at any time indicated reluctance to facilitate the drug transaction, which suggests that he was disposed to aid and abet the crime, rather than being induced to do so by Stephensen's solicitations. We also find no merit in appellant's argument that insufficient evidence was produced at trial to support his conviction. Therefore, we affirm.

## I. BACKGROUND

■ In deciding whether the trial judge should have given the jury an entrapment instruction, this court must consider appellant's version of the facts as true. *See United States v. Borum,* 584 F.2d 424, 427 (D.C.Cir.1978). According to appellant's testimony on direct and cross-examination, he "used to be involved in the drug trade," Trial Transcript ("Tr.") at 207, and was convicted in 1987 for possession of cocaine, and in 1989 for attempted distribution of cocaine. Appellant further testified that he first met Officer Stephensen on November 12, 1992, through one of appellant's brothers, Dion Jones, but little if anything was said between appellant and Stephensen on that date. The two met again on November 14th, when Stephensen drove by the corner of 21st and Eye Streets, N.E., looking for appellant's brothers; on that occasion, Stephensen and appellant spoke for twenty or thirty minutes about "drugs, girls, all kinds of things." Tr. at 178. In this conversation, Stephensen asked appellant for an ounce of cocaine; appellant replied that he did not have any drugs. Stephensen also asked about the prices of different drugs and whether appellant could introduce him to people from whom he could buy drugs. In response to the question as to whether appellant "knew anybody who was selling various amounts of drugs," appellant stated that he did not know but that he "would check" for Stephensen. Appellant added that he "knew a few dudes in the neighborhood, and [he] would check for him." Tr. at 179. On November 17th, Stephensen returned to the corner of 21st and Eye, and again told appellant that he was interested in buying an ounce of cocaine and asked if appellant could help him. Appellant told Stephensen that he would "see if [he] could get [the ounce] for him," Tr. at 218, and Stephensen said he would return the next day to purchase the cocaine.

On November 18th (the date of the drug transaction leading to appellant's indictment), appellant met Stephensen a number of times. At the first meeting, between 12 and 1:30 p.m., Stephensen drove to the corner of 21st and Eye, and called appellant over to his car. Stephensen asked where appellant's brothers were, and appellant replied that he did not know. Then appellant asked if Stephensen was "[t]rying to get down"—*i.e.,* trying to buy drugs—and Stephensen answered that he was. Tr. at 221. Appellant asked Stephensen how much he wanted, and Stephensen responded that he was interested in buying an ounce of cocaine. Appellant asked if Stephensen had $1,000 for the drugs. Stephensen mentioned that appellant's brother Dion had shorted him four grams on a previous drug transaction. Appellant assured Stephensen that "I can get that ounce for you," and asked Stephensen to drive him to a public phone so he could call Rommell Buchanan. Tr. at 225. Appellant told Stephensen that Buchanan "probably could rush [one ounce of cocaine] over here," and Stephensen agreed to drive appellant to the public phone. Tr. at 226.

As the two were leaving, appellant spotted another person from whom Stephensen might be able to buy drugs. Appellant asked Stephensen to pull the car over so that he could get out and approach the person. Appellant returned to the car and told Stephensen that the person did not have any drugs to

sell. The two then proceeded to the public phone.

Appellant was unable to contact Buchanan from the phone, but he gave Stephensen his pager number so that Stephensen could call later that day "to get in touch with me on this coke—on this transaction." Tr. at 240. Appellant told Stephensen that, if he could not get the drugs from Buchanan, there were others from whom he could get drugs. Further, appellant assured Stephensen that he would only send him to someone with high quality cocaine, stating that he "do[es]n't buy bad stuff," and informed Stephensen that the "ounce" of cocaine he would buy might contain as much as thirty grams, two grams more than a typical ounce. Tr. at 230.

Sometime after appellant's initial attempt to find someone to sell drugs to Stephensen—presumably after appellant first attempted to contact Buchanan from the pay phone—Stephensen told appellant that, if appellant could get him more than the ounce of cocaine originally discussed, he might give appellant some drugs to deal or some money for his services. Stephensen told appellant how much money he was willing to spend and mentioned getting a "sixty-two," i.e., sixty-two grams of cocaine. Tr. at 184.

Later that day, Stephensen paged appellant. At about 4:30 p.m., appellant responded to the page. Stephensen told appellant that he wanted to buy sixty-two grams of cocaine and that, if appellant could get it for him, he would "look out for" appellant. Tr. at 191. The two agreed to meet later that day at the corner of 21st and Eye. Sometime after this conversation, but before Stephensen's arrival, appellant called Buchanan and determined that Buchanan did in fact have cocaine to sell to Stephensen.

Between 5:30 and 6 p.m., Stephensen and appellant met at 25th and Eye Streets, N.E., and Stephensen asked appellant if he could get him the sixty-two grams of cocaine. Appellant said that he could call Buchanan to see whether he was going to "definitely come." Tr. at 193. Between 6 and 6:30 p.m., appellant and Stephensen met Buchanan outside the apartment building where appellant lived with his mother. Appellant got out of Stephensen's car to see if Buchanan had the drugs and to "hook [Stephensen] up with [Buchanan]." Tr. at 194. After a brief conversation between appellant and Buchanan, appellant took Stephensen and Buchanan, at Stephensen's suggestion, into his mother's apartment, and ultimately into his bedroom, to conduct the drug transaction out of public view.

Once inside appellant's bedroom, Stephensen and Buchanan exchanged the money and the drugs—60.13 grams of cocaine base—while appellant played a video game. Appellant testified that he never touched the money or the drugs, although Stephensen testified that appellant handed the drugs from Buchanan to Stephensen and counted the money for Buchanan. When Stephensen asked appellant how the drugs looked, appellant replied, "I guess it looked good." Tr. at 203. Stephensen told Buchanan that he was short $50 of the agreed price. Buchanan asked appellant, "Well, is this guy with you, Eric?" to which appellant responded, "From what I know, he's all right." Tr. at 204. On cross-examination, appellant characterized his role in the drug transaction as "assisting." Tr. at 236. After concluding the transaction, the three men left the apartment and went their separate ways. Appellant never received any money from Buchanan in connection with the drug transaction.

Stephensen and appellant saw each other for the last time on January 27, 1993, when Stephensen gave appellant $50 and told him that it was "for the transaction." Tr. at 199. Presumably on that same day, but certainly after the 18th of November, Stephensen threatened to kill appellant's brother Dion, because, on another occasion, Dion had sold Stephensen $500 worth of fake drugs. Stephensen told appellant that he would appreciate appellant talking to Dion and trying to get Stephensen's money back. Appellant was indicted in April 1993.

## II. ANALYSIS

### A. The Defense of Entrapment

In considering the defense of entrapment, the controlling question is whether government agents "implant[ed] in the mind of an innocent person the disposition to com-

mit the alleged offense and induce[d] its commission in order that they may prosecute." *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212–13, 77 L.Ed. 413 (1932). This circuit has followed a "bifurcated approach" to entrapment: "[1] once a defendant meets his burden of proving that the government persuaded him to commit a crime, [2] the government must prove beyond a reasonable doubt that the defendant was ready and willing to do so." *Whoie*, 925 F.2d at 1485. Although these questions of fact are within the purview of the jury, *id.* at 1483, a trial judge need not give an entrapment instruction if there is no "evidentiary foundation for a finding of government inducement," *i.e.*, if the defendant has not come forward with "*some* evidence of government 'inducement.'" *Burkley*, 591 F.2d at 914 (footnote omitted); *see also Mathews*, 485 U.S. at 62, 108 S.Ct. at 886; *Lopez v. United States*, 373 U.S. 427, 434–35, 83 S.Ct. 1381, 1385–86, 10 L.Ed.2d 462 (1963) ("[B]efore the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged."); *id.* at 436, 83 S.Ct. at 1386 ("[T]he paucity of the showing [of inducement] might well have justified a refusal to instruct the jury at all on entrapment.").

Appellant argues that the record discloses evidence of government inducement in four forms: (1) repeated requests that appellant arrange the drug transaction; (2) a promise of reward, *i.e.*, money and/or an opportunity to deal drugs; (3) a threat against appellant's brother; and (4) a plea of friendship. However, upon careful review of the record, we cannot find sufficient evidence to support appellant's claims of inducement.

### 1. Inducement Through Repeated Government Solicitation

Even when a government agent repeatedly requests that the defendant engage in criminal conduct, inducement is not established unless the requests are coupled with persuasive overtures, *see, e.g., Sherman v. United States*, 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958) (The Court found inducement where a government informer not only made repeated requests, but also sought to "persuade" defendant by "resort[ing] to sympathy."); *Sorrells*, 287 U.S. at 441, 53 S.Ct. at 212 (The Court found evidence of inducement where the government agent "lured defendant, otherwise innocent, to [commit the criminal act] by repeated and persistent solicitation in which he succeeded by taking advantage of the sentiment aroused by reminiscences of their experiences as companions in arms in the World War."), or unless there is evidence of reluctance on the defendant's part demonstrating that the repetition of the requests may have moved "an *otherwise unwilling* person to commit a criminal act," *Fletcher v. United States*, 295 F.2d 179, 181 (D.C.Cir.1961) (emphasis added) (The court found no inducement where "there was no showing of the slightest reluctance on the part of appellant to make the [drug] deal."), *cert. denied*, 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530 (1962); *see, e.g., Sherman*, 356 U.S. at 373, 78 S.Ct. at 821 (Inducement was shown where "[o]ne request was not enough, for ... additional ones were necessary to overcome, first, petitioner's refusal, then his evasiveness, and then his hesitancy in order to achieve capitulation."). Thus, "*mere* solicitation" by the Government, to which "the defendant acquiesced with reasonable readiness," does not evince inducement. *Borum*, 584 F.2d at 428 (emphasis added);[2] *see also Jacobson v. United States*, 503 U.S. 540, 550, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992) ("Had the

---

**2.** In *Borum*, the court found that the record established a jury question on entrapment where government agents solicited guns from the defendant some twenty times, but the court explicitly conditioned its holding on the presence of evidence that "the defendant on several occasions indicated his unwillingness to deal with guns," and "[t]here was no evidence that the appellant had dealt with guns in the past." 584 F.2d at

429; *see also id.* at 429 n. 9 ("Borum's reluctance was communicated to the agents at the time of their requests ... and the government agents sought to override that reluctance by redoubling their requests. Our opinion in the present case is not meant to stand for the proposition that frequent solicitation by government agents is by itself enough to require an entrapment instruction.").

agents ... simply offered petitioner the opportunity to [commit the crime], and petitioner ... had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.").

Here, appellant has failed to demonstrate that Stephensen's solicitations were accompanied by any persuasive overtures prior to appellant's and Stephensen's first November 18th meeting, at which point it was *appellant* who did the initial soliciting by asking if Stephensen was trying to buy drugs, how much Stephensen wanted, and whether Stephensen had money for the purchase. Because appellant was disposed to facilitate the drug transaction by the time of that first November 18th meeting, he can only prevail if Stephensen's earlier solicitations could be construed as having induced appellant's disposition, which appellant might be able to establish if he could show that Stephensen made a threat or promise of reward prior to November 18th. However, as discussed *infra*, we find that appellant has made no such showing.

Moreover, there is no indication that appellant manifested a reluctance to assist Stephensen that was then overridden by Stephensen's requests. When Stephensen asked appellant for drugs on November 14th and 17th, appellant, far from expressing reluctance, volunteered to check into finding a seller. This ready acquiescence thwarts appellant's claim that the record provides a basis to assert that Stephensen's repeated requests induced him to aid and abet the distribution of cocaine; rather, the record suggests that appellant acted out of his own disposition to commit the offense.

## 2. Inducement by the Promise of Reward

■ Although Stephensen promised to give appellant money and/or drugs if appel-

lant could get more than an ounce of cocaine, the critical inquiry remains whether such a promise shows that "a law-abiding citizen's will to obey the law [was] overborne." *United States v. Kelly,* 748 F.2d 691, 698 (D.C.Cir.1984); *see also Burkley,* 591 F.2d at 914 (The court defined "inducement" as "government conduct that would create a risk of causing an otherwise unpredisposed person to commit the crime charged."). If the defendant has already manifested a readiness to participate in the criminal conduct, a subsequent promise of reward does not automatically entitle the defendant to an instruction on entrapment, unless there is some evidence that the defendant would not have proceeded to the point of committing the crime charged but for the promise of reward. *Cf. United States v. Brooks,* 567 F.2d 134, 138 (D.C.Cir. 1977) (Government agents' offer to pay defendant for locating guns and people with guns to sell did not entitle defendant to an entrapment instruction where, prior to the transaction for which defendant was arrested, he had, on his own initiative, participated in several illegal arms sales to the same undercover fencing operation.).

In the present case, appellant had already manifested a willingness to facilitate the drug transaction before Stephensen made the promise of reward. By the time compensation was discussed, appellant had already volunteered to "check" into finding a seller, taken the initiative to inquire whether Stephensen wanted to buy drugs and how much he wanted, assured Stephensen that he could get the drugs for him, and attempted to find a seller. There is no evidence that appellant would have abandoned this course of assistance had Stephensen not volunteered to reward him with money or drugs. Thus, Stephensen's promise of reward provides no basis for a finding of inducement.[3]

---

**3.** Our conclusion is not discordant with *United States v. Boone,* 543 F.2d 412 (D.C.Cir.1976). In *Boone,* the court found that the government agent's promise to "make it worth [Boone's] while" if Boone accompanied the agent in completing a drug sale was a sufficient promise of reward to require an entrapment instruction, but only when the offer of reward was "taken with Boone's other testimony contradicting the Government's case." *Id.* at 414. At trial, Boone had taken the stand and "contradicted practically all the incriminating features of the Government's evidence including that of predisposition." *Id.* at 412. Thus, *Boone* is distinguishable from the *instant case and does not stand for the proposition that an offer of reward standing alone entitles the defendant to an entrapment instruction without regard for how the offer fits with the rest of the evidence produced at trial.*

■ Moreover, even if appellant had not clearly manifested a willingness to assist Stephensen prior to Stephensen's promise of compensation, any reward offered by Stephensen was in the nature of providing appellant with the typical benefit of participating in this type of criminal enterprise, a form of reward that is not sufficient, by itself, to establish inducement. *See, e.g., United States v. Ellis,* 23 F.3d 1268, 1273 (7th Cir. 1994) (" 'If the ordinary profits of crime as offered by the government agent are what induced the defendant to commit the crime, that defendant has not been entrapped.' " (quoting the District Court's jury instruction on inducement)).

### 3. Inducement by Threat or Through a Plea of Friendship

Appellant's final two arguments for inducement require little comment. Stephensen's alleged threat to kill appellant's brother, Dion, was made *after* November 18th, and thus the threat could not have induced appellant to assist in the November 18th drug transaction. And although Stephensen mentioned to appellant on November 18th that Dion had shorted Stephensen on a prior drug transaction, there is no indication that Stephensen's comment was in the nature of a threat or that Stephensen suggested that, by assisting in the November 18th drug transaction, appellant would somehow absolve Dion. Finally, there is no evidence that Stephensen ever made a plea of friendship to appellant.

\*        \*        \*

Given that appellant offered no evidence of inducement warranting an instruction on entrapment, we also find that the trial court did not abuse its discretion in refusing to allow defense counsel to argue entrapment to the jury. *See United States v. Sawyer,* 443 F.2d 712, 713–14 (D.C.Cir.1971) (A trial court does not abuse its "broad discretion in controlling the scope of closing argument" where the court excludes "statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." (footnotes omitted)).

### B. *Sufficiency of the Evidence*

■ In order to support a conviction for "aiding and abetting," the Government must offer evidence sufficient to show "knowledge and participation to indicate that [the defendant] knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed." *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982). There is ample evidence in the record here on which a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). As detailed above, appellant made repeated efforts to find a seller, and he arranged the meeting between Stephensen and Buchanan that culminated in a drug transaction in appellant's bedroom. Moreover, when the evidence is viewed in the light most favorable to the prosecution, as required when evaluating the sufficiency of the evidence, *see id.,* the record shows appellant handing the drugs to Stephensen and counting the money for Buchanan. In short, there can be little doubt about the sufficiency of the evidence supporting a conviction.

### III. CONCLUSION

For the reasons set forth above, we affirm appellant's conviction.

*So ordered.*