# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-3214**

**September Term, 2024**

FILED ON: AUGUST 1, 2025

UNITED STATES OF AMERICA,
APPELLEE

v.

JOEL SORTO,
APPELLANT

Consolidated with 23-3215, 23-3221

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cr-00262-1)
(No. 1:13-cr-00262-2)
(No. 1:13-cr-00262-5)

Before: WILKINS, RAO and WALKER, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED**.

* * *

Appellants Joel Sorto, Yonas Eshetu, and Pablo Lovo were convicted in May 2014 of conspiracy to commit Hobbs Act robbery, a violation of 18 U.S.C. § 1951. They were caught in a reverse-sting operation conducted by the District of Columbia's Metropolitan Police Department

("MPD"). Sorto and Lovo also were convicted of violating 18 U.S.C. § 924(c) for using and carrying a firearm during and relation to the robbery offense. Our Court affirmed the convictions and remanded for consideration of ineffective assistance of counsel claims that Appellants raised on direct appeal. *United States v. Eshetu*, 863 F.3d 946, 951–58 (D.C. Cir. 2017) ("*Eshetu I*").[1] Appellants now appeal the District Court's post-remand denial of their consolidated motion to vacate their § 1951 convictions based on the ineffectiveness claims. They also argue that the District Court erred in refusing to hold an evidentiary hearing on the motion. We affirm.

## I.

Because *Eshetu I* and the District Court's opinion below both recounted the trial record in detail, we present only the facts relevant for this appeal. In August 2013, Miguel Rodriguezgil, an undercover MPD officer, and Janice Castillo, a federal agent posing as a "drug courier," initiated a scheme to catch Lovo in a conspiracy to commit an armed robbery of a purported stash house. To do so, Rodriguezgil, known in his undercover capacity as "Santos," engaged Jonathan Avila, Lovo's friend who was (unbeknownst to Lovo) cooperating with police. Rodriguezgil, Avila, and Lovo met in Washington, D.C., on August 13, 2013, and the officer proposed the robbery conspiracy. According to Rodriguezgil's testimony, which the jury credited, Lovo agreed to use his "crew" to complete the scheme. Over three subsequent meetings, a plan emerged to rob a fictitious stash house on September 5, 2013. Neither Rodriguezgil nor Castillo directed Lovo to involve Sorto or Eshetu in the crime, but Lovo brought Sorto to one of the planning meetings, and he brought Sorto, Eshetu, and two other men on the date of the "would-be robbery." *United States v. Eshetu*, 703 F. Supp. 3d 26, 31 (D.D.C. 2023). On that day, officers arrested Appellants and found firearms, wire, ammunition, magazine clips, facemasks, and two machetes in Lovo's rental car on scene.

## II.

Appellants were charged with and convicted of conspiring to commit Hobbs Act robbery, which involves interfering with interstate commerce by robbery in violation of 18 U.S.C. § 1951. All three were charged with, and Lovo and Sorto were convicted of, using, carrying, or possessing a firearm during a crime of violence and abetting that offense, in violation of 18 U.S.C. §§ 2 and 924(c). Following our decisions in *Eshetu I* and *Eshetu II*, Appellants filed a consolidated motion to vacate their Hobbs Act robbery convictions based on ineffective assistance of trial counsel, which the District Court denied. In November 2023, they filed timely notices of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), we vacate a conviction or sentence for ineffective assistance of counsel only if an attorney's performance was deficient and that deficiency prejudiced the defense. A person raising a Sixth Amendment ineffectiveness claim bears the burden of establishing both. *United States v. Gray-Burriss*, 920 F.3d 61, 65 (D.C. Cir. 2019). "[W]e review *de novo* a denial of an ineffective assistance of counsel claim." *United States v. Abney*, 812 F.3d 1079, 1087 (D.C. Cir. 2016). "[T]he district court's factual findings made in

---

[1] After intervening Supreme Court precedent, we vacated the § 924(c) convictions. *United States v. Eshetu*, 898 F.3d 36, 37–38 (D.C. Cir. 2018) (per curiam) ("*Eshetu II*").

the course of judging an ineffective assistance of counsel claim may be set aside only if clearly erroneous . . . ." *United States v. Mathis*, 503 F.3d 150, 151 (D.C. Cir. 2007) (citing *Strickland*, 466 U.S. at 698); *see also Strickland*, 466 U.S. at 698 (noting that factual findings are "subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a)"). Thus the "performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698.

### III.

As grounds for vacating their convictions, Appellants point to three areas in which their trial counsel were allegedly ineffective. First, they failed to object to the admission of recordings of the meetings between law enforcement and Appellants in August and September 2013, which contained conversations in Spanish and English. Second, they neglected to pursue a selective enforcement claim. And third, they never investigated an entrapment defense or requested an entrapment jury instruction. On the trial record and the facts asserted in the motion to vacate convictions, the defendants have not established prejudice under *Strickland*.[2]

The argument about the Spanish-language tapes is unpersuasive. According to Appellants, trial counsel should have requested exclusion on the basis that the recordings were "inaudible and not sufficiently comprehensible for the jury to understand" without certified English-language transcripts. Appellants' Br. 25. But Appellants have not established a "reasonable probability" that, at a trial without the recordings, a jury would have acquitted them. *Strickland*, 466 U.S. at 694. The tapes primarily contain the Appellants' admissions and thus were not hearsay. FED. R. EVID. 801(d)(2)(A). Even if the recordings were excluded, both law enforcement witnesses at trial could have testified to their contents, subject to other prerequisites of admissibility. *Cf. United States v. Smith*, 640 F.3d 358, 366–68 (D.C. Cir. 2011) (finding law enforcement testimony about contents of recording between defendant and co-conspirator was not hearsay under Rule 801(d)(2) and thus admissible). And, at that hypothetical trial, if a witness forgot what one of the Appellants said while being recorded, the government could have used the tapes to refresh the witness's recollection. *See, e.g.*, *Monroe v. United States*, 234 F.2d 49, 56–57 (D.C. Cir. 1956) (finding no reversible error in use of recorded phone conversations when officer used recordings to refresh his recollection prior to testimony and then testified about their contents). Accordingly, a jury in a trial without the tapes would have considered substantially the same evidence as the jury below did before it rendered guilty verdicts. Despite counsel's suggestion at oral argument that the tapes

---

[2] Appellants also contend that, following our remand in *Eshetu I*, the District Court should have held an evidentiary hearing once they filed the motion to vacate their convictions. Even if the District Court erred, we decline to remand solely for further fact development. In their briefs, Appellants principally argue that a hearing would have established trial counsel's deficient performance, and they cursorily reference prejudice. But the District Court held that Appellants failed to show *Strickland* prejudice, and deficiency is uncontested on appeal. At argument, Appellants did not identify or allege any facts or evidence they would have introduced at a hearing to meet their burden of showing prejudice. Sorto's counsel mentioned that, at a hearing, the "defendants themselves would have been able to testify." Oral Arg. Tr. 6:8–6:9. But when asked to explain what testimony Appellants could have provided, counsel only offered Appellants' ability to explain *why* trial counsel failed to pursue an entrapment defense, *id.* at 7:07–8:13— evidence that might support a deficiency finding but has no bearing on the prejudice analysis. As the party claiming error on appeal, Appellants fail to identify what, if any, role an evidentiary hearing would have played in their effort to establish prejudice. The failure to conduct a hearing therefore did not harm Appellants' ineffectiveness claim, and we deny their request for a second remand.

impermissibly bolstered the government witnesses' testimony, Appellants have not identified any such bolstering in the trial record or any case supporting this theory of prejudice. Appellants have not otherwise articulated why exclusion of the tapes makes an acquittal reasonably likely, and thus they did not meet their burden of establishing prejudice. *United States v. Glover*, 872 F.3d 625, 634 (D.C. Cir. 2017) (assessing prejudice of contested testimony by looking to "remaining permissible testimony").

Nor can we accept Appellants' contention that the failure to object to the tapes amounted to *Stickland* prejudice because it resulted in review for plain, and not harmless, error on direct appeal. That argument, in most cases, would permit an end-run around our preservation rules by guaranteeing a prejudice finding every time a defendant's lawyer should have objected but failed to do so. Yet even if trial counsel *had* preserved an objection to the Spanish-language tapes, Appellants have not established a reasonable probability that the claim on direct appeal would have been successful. Instead, they argue only that the harmless error standard would have applied—not that, in applying the standard, this Court would have held that the error was reversible. "For nonconstitutional errors [to be reversible], the standard is whether the error . . . ha[d] 'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Evans*, 216 F.3d 80, 90 (D.C. Cir. 2000) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (2000)). Without any such argument, Appellants cannot meet *Strickland*'s prejudice requirement.

The selective enforcement theory fares no better. Appellants were not prejudiced because they have not shown how they would have met the demanding standard for receiving discovery on such a claim—let alone convinced a judge to dismiss the indictment. A selective enforcement claim, like one for selective prosecution, implicates ordinary equal protection principles. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1147 (D.C. Cir. 2023). To succeed, a criminal defendant must show the enforcement "had a discriminatory effect and was motivated by a discriminatory purpose." *Frederick Douglass Found.*, 82 F.4th at 1147 (quoting *Armstrong*, 517 U.S. at 456) (citation modified). *Armstrong* requires a defendant seeking discovery on selective prosecution claims to "show some evidence of both." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). Although some circuits have since adopted a more permissive approach to discovery for selective *enforcement* claims, at the time of Appellants' trial, every circuit to address the question applied *Armstrong*'s rule from the selective *prosecution* context. *See United States v. Washington*, 869 F.3d 193, 216–217 & nn.98–100 (3d Cir. 2017) (collecting cases).

Appellants do not contend otherwise. Instead, they cite a 2020 law review article about the post-2014, out-of-circuit evolution toward a less stringent standard for obtaining discovery on selective enforcement claims, along with two cases in the D.C. District Court and others from other districts that involve minority defendants targeted in reverse "stash house" stings. We agree with the District Court, for the reasons it stated, that Appellants have not shown a reasonable probability they would have received discovery on a selective enforcement claim in 2014. *Eshetu*, 703 F. Supp. 3d at 44–47. And even if we assume discovery would have been available under *Armstrong*'s demanding standard or the less burdensome ones that several circuits have since adopted, Appellants have not established *any* likelihood that the selective enforcement claims

4

might have succeeded on the merits. Here, like in the selective prosecution context, a prejudice finding requires Appellants to show "a reasonable probability that the challenge would have successfully . . . [attacked the] indictment." *United States v. Weathers*, 493 F.3d 229, 238 (D.C. Cir. 2007). Although Appellants bear the burden of establishing prejudice, they neither argue—nor provide the Court any basis to conclude—that law enforcement here had discriminatory intent, as is required to prevail on a motion to dismiss the indictment for selective enforcement.

Finally, Appellants' entrapment arguments are meritless. "The entrapment defense has two elements: government inducement to commit a crime and [the defendant's] lack of predisposition . . . to commit [it]." *United States v. Layeni*, 90 F.3d 514, 516 (D.C. Cir. 1996). After the defendant "meets his burden of proving that the government persuaded him to commit a crime," the burden shifts to the government to "prove beyond a reasonable doubt that the defendant was ready and willing to do so." *Id.* (quoting *United States v. McKinley*, 70 F.3d 1307, 1312 (D.C. Cir. 1995)). Lovo believes he was entrapped by Rodriguezgil and Castillo through his friend, Avila. Our Circuit has noted that government inducement can occur through pleas based on friendship. *See Evans*, 216 F.3d at 90. Sorto and Eshetu, however, raise a "derivative entrapment" theory, under which Lovo, as the government's unsuspecting agent, induced them to join the scheme. *See United States v. Washington*, 106 F.3d 983, 993 (D.C. Cir. 1997) (per curiam). In the District Court and on appeal, Appellants point to several pieces of evidence that their trial counsel should have investigated or introduced to support an entrapment defense: Lovo's employment records, logs detailing phone calls between Lovo and Avila, and the contents of a post-conviction telephone call between the two.

Lovo has not met his burden of establishing prejudice because, even if this evidence had been introduced at trial—*and* assuming Lovo was entitled to an entrapment jury instruction—there is no reasonable likelihood that the jury would have acquitted him. At most, the call logs go to whether Lovo was induced to commit the conspiracy to commit robbery. Once Lovo provided sufficient evidence to permit a jury to find inducement, the burden would have shifted to the government to prove that Lovo was predisposed (*i.e.*, "ready and willing") to commit the crime. *Layeni*, 90 F.3d at 516 (citation modified). Accounting for the remaining "new" evidence, the District Court correctly determined there was overwhelming proof, credited by the jury, that Lovo eagerly and willingly engaged in the scheme. *Eshetu*, 703 F. Supp. 3d at 38.[3] He "declined" the undercover officers' invitations to back out of the arrangement, "reiterated" his crew's suitability for successfully completing the robbery, and "touted" the weapons he planned to use during the crime, all while displaying a calm, relaxed, and confident demeanor. *Id.* Lovo even "t[ook] charge" of his co-defendants on the day of the planned offense. *Id.* On this record, Lovo has not

---

[3] We also reject Appellants' suggestion that Avila and Rodriguezgil took advantage of Lovo's "subjective vulnerabilities" by "pl[ying]" him with liquor. Appellants' Br. 35–36. The notion that Avila manipulated Lovo with alcohol would bear only on inducement, and without more, it would not have created a jury question on that prong of the entrapment defense. *Cf. United States v. Trejo*, 136 F.3d 826, 828 (D.C. Cir. 1998) (finding entrapment instruction not warranted as matter of law when only evidence of inducement was informant's provision of drugs to defendant, which caused him to "hallucinate and . . . accede to the informant's request to . . . sell guns" (citation modified)). And the implication that any alcohol from Rodriguezgil overcame Lovo's purported lack of predisposition is unfounded. The minimal role that any alcohol played in the scheme, *see Eshetu*, 703 F. Supp. 3d at 40, is far outweighed by Lovo's clear willingness to go along with the undercover officer's plan, which demonstrated Lovo's predisposition and forecloses a prejudice finding on that basis.

shown a reasonable probability that a jury instructed on entrapment would have acquitted him.

Sorto and Eshetu's derivative entrapment claim is equally unavailing. They fail to show *Strickland* prejudice because, even considering the facts alleged in the motion to vacate below and the arguments made on appeal, they would not have been entitled to a derivative entrapment jury instruction. Derivative entrapment requires that the government agents direct an unwitting intermediary to "deliver [their] inducement to a *specified* third party." *Washington*, 106 F.3d at 993 (emphasis added). Because the government's witnesses at most asked Lovo to involve his "crew"—and never directed Lovo to engage Sorto and Eshetu specifically—the derivative entrapment defense has no legs. *Eshetu*, 703 F. Supp. 3d at 41. On appeal, Sorto and Eshetu do not even argue or identify any evidence suggesting that the undercover officers knew about them before Lovo involved them in the scheme.[4]

\* \* \*

For the foregoing reasons, we affirm the District Court. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

---

[4] In passing, Appellants argue that "the female undercover agent urged [Lovo] to bring Mr. Sorto and Mr. Eshetu along as participants." Appellants' Br. 39; *see also* J.A. 223. That argument is foreclosed by the trial record, *Eshetu*, 703 F. Supp. 3d at 41, and Appellants do not offer any evidence disputing the testimony adduced at trial. This stray line from Appellants' filings falls well short of establishing that the District Court clearly erred in its factual findings based on the trial record. *Mathis*, 503 F.3d at 151. Because there is no credible basis to believe that Castillo directed Lovo to involve Sorto and Eshetu, Appellants' arguments about Sorto's and Eshetu's subjective "vulnerabilities" are irrelevant. *See* Appellants' Br. 36.

6